U S WEST COMMUNICATIONS, INC., Appellant (Petitioner),

v.

The WYOMING PUBLIC SERVICE COMMISSION; Steve Ellenbecker, and Doug Doughty, in their official capacities as Commissioners of the Wyoming Public Service Commission, Appellees (Respondents).

No. 96–264.

Supreme Court of Wyoming.

April 17, 1998.

Paul J. Hickey and Richard D. Bush of Hickey, Mackey, Evans, Walker & Stewart, Cheyenne; and William P. Heaston, Denver, CO, for Appellant (Petitioner).

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Carrol S. Verosky, Assistant Attorney General, Cheyenne, for Appellees (Respondent).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

■ In 1994, residents in the Rock River, Wyoming area requested that the separate local telephone exchanges currently provided by U S West Communications, Inc. (U S West) and Union Telephone Company, Inc. (Union) be combined into one local calling area which included Laramie, Wyoming. After a public hearing, the Wyoming Public Service Commission (PSC) agreed and issued an order to implement the service. The order also set additive rates for the service at a level below the proposals of both companies. U S West claims that the PSC exceeded the statutory authority conferred by the Wyoming Telecommunications Act of 1995 when it independently determined additive rates and ordered U S West to pay Union from the rates received from U S West customers. U S West contends that the PSC further erred when it treated the rates proposed by U S West as a request for price regulation.

We reverse and remand the PSC's order.

## I. ISSUES

Appellant, U S West, presents the following issues for review:

I. Whether the Wyoming Public Service Commission ("PSC") acted in excess of its statutory authority in setting additive prices for Extended Area Service ("EAS").

II. Whether the PSC has the authority to order U S WEST Communications, Inc. ("U S WEST") to remit revenues from the EAS additive prices, collected by U S WEST from its customers, to Union Telephone Company, Inc. ("Union") in order to subsidize Union's operation and provision of EAS to its customers.

III. Whether the PSC has the authority to unilaterally change a customer petition for EAS service into a price regulation application by U S WEST as defined and governed by the provisions of W.S. § 37–15–203(b).

(Footnote omitted.)

Appellee, the PSC, responds with this statement of issues:

I. Did the Wyoming Public Service Commission act within the scope of its statutory authority in establishing additive prices for extended area service?

II. Does the Public Service Commission have the authority to require U.S. West to remit revenues from the Extended Area Service additive prices collected by U.S. West to Union Telephone Company?

III. Does the Public Service Commission have the authority to consider the application by U.S. West for pricing of a noncompetitive service as an application for innovative and non-traditional price regulation pursuant to the 1995 Wyoming Telecommunications Act?

## II. FACTS

In late 1994, 132 residents of the Rock River local calling exchange petitioned the PSC for an extended area service (EAS) between the Rock River exchange, serviced by Union, and the Laramie exchange, serviced by U S West. An EAS is a service plan in which long distance toll rates between two or more exchanges are eliminated, and all users in that area may call any exchange for a flat local rate.

Upon receipt of the petition, the PSC notified and directed U S West and Union to provide estimated costs, rates and a timetable for the establishment of the requested EAS. The PSC also set the matter for two public hearings which were held in Rock River on March 9 and September 26, 1995.

After completion of the public hearings, the PSC took the matter under advisement. Upon notice to the parties and the people who had appeared at the public hearings, the PSC held another "public meeting" in the PSC's offices on November 21, 1995 for further discussion. Thereafter, the PSC issued its order on December 18, 1995. In effect,

the PSC found that the establishment of an EAS was in the best interest of the public, but found that no one had submitted an acceptable plan for additive rates. The PSC ruled that the proposal submitted by U S West would result in a return of the net revenues that were formerly received from long distance service, i.e., a "revenue neutral" transition, but would impose an undue burden on the affected customers. The PSC proceeded to set its own rate, finding that the rate was comparable to past EAS additive rates for other areas established by the PSC. The PSC applied an additive rate to U S West's customers which would exceed the revenues U S West formerly received in long distance tolls, and ordered U S West to submit a monthly payment to Union from these fees to reimburse Union for lost long distance revenues not recouped through the additive rates charged to their customers.

U S West timely filed a petition for rehearing, challenging the PSC's authority to establish an additive price under the Wyoming Telecommunications Act of 1995. On February 16, 1996, the PSC denied rehearing and held that the additive price proposal submitted by U S West would be considered an application for alternative pricing pursuant to Wyo. Stat. § 37–15–203 (1997) of the Wyoming Telecommunications Act of 1995. The PSC informed U S West that it had sixty days in which to notify the PSC whether it would accept the PSC's EAS price modifications or elect to revert to the rates in effect prior to the establishment of the EAS. The PSC also denied a stay of the implementation of the EAS.

U S West filed a request for clarification on March 4, 1996, again inquiring into the PSC's authority to set the additive price and requesting the basis for the PSC's unilateral conversion of the additive rate proposal into an application for "innovative and nontraditional" price regulation under the Wyoming Telecommunications Act of 1995. The PSC did not respond prior to the time U S West was compelled to file its appeal to the district court.

U S West filed a petition for review with the district court on March 18, 1996. On August 23, 1996, the district court certified the case to this court.

## III. STANDARD OF REVIEW

■ Our standard of review in a certified case is to examine the decision of an administrative agency as if we were the reviewing court of first instance. *Sheridan Race Car Ass'n v. Rice Ranch*, 864 P.2d 30, 32 (Wyo. 1993). Our review of an agency action is governed by Wyo. Stat. § 16–3–114(c) (1997) which states, in pertinent part:

(c) * * * [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party * * *. The reviewing court shall:

* * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * *

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right[.]

## IV. DISCUSSION

The sole issue on appeal is whether the directives in the PSC's order exceed statutory authority. First, U S West contends that the PSC exceeded its authority under the Wyoming Telecommunications Act of 1995 (Telecommunications Act), Wyo. Stat. §§ 37–15–101 through 37–15–501 (1997), because the PSC did not have the power to set rates for telecommunication services or to order U S West to pay Union. Secondly, U S West claims that the PSC does not have the authority to convert the additive rate proposal, submitted on order of the PSC pursuant to the petition for an EAS, into an application for innovative and nontraditional rate regulation. Thus, the dispute requires review of the Telecommunications Act to determine the

legislature's intent regarding the scope of the PSC's authority. *In re Honeycutt,* 908 P.2d 976, 978 (Wyo.1995).

 A statute will be construed as a whole with ordinary and obvious meaning applied to words as they are arranged in paragraphs, sentences, clauses and phrases to express the intent of the legislature. *Wyoming Ins. Guar. Ass'n v. Woods,* 888 P.2d 192, 197 (Wyo.1994). If the language of a statute is clear and unambiguous, we apply its plain meaning and need not resort to the rules of statutory construction. *Sue Davidson, P.C. v. Naranjo,* 904 P.2d 354, 356 (Wyo. 1995); *Halpern v. Wheeldon,* 890 P.2d 562, 565 (Wyo.1995); *Houghton v. Franscell,* 870 P.2d 1050, 1054 (Wyo.1994).

 The language of a statute will be strictly construed when determining the powers granted to an agency. *Tri County Telephone Ass'n, Inc. v. Wyoming Public Service Com'n,* 910 P.2d 1359, 1361 (Wyo.1996); *Montana Dakota Utilities Co. v. Public Service Com'n of Wyoming,* 847 P.2d 978, 983 (Wyo.1993).

> As a creature of the legislature, an administrative agency has limited powers and can do no more than it is statutorily authorized to do. * * * Any agency decision that falls outside the confines of the statutory guidelines articulated by the legislature is contrary to law and cannot stand. * * * Such decisions are arbitrary and capricious.

*Tri County Telephone Ass'n, Inc.,* 910 P.2d at 1361. "If there is a reasonable doubt as to the existence of particular power, the statute will be construed as not granting that power." *Id.*

### A. AUTHORITY TO SET RATES UNDER THE TELECOMMUNICATIONS ACT

On March 1, 1995, the Telecommunications Act was enacted to "provide a transition * * * to competitive markets and to maintain affordable essential telecommunications services through the transition period * * *." Wyo. Stat. § 37–15–102. The Telecommunications Act separates and defines the PSC's rate-making powers on the basis of competitive and noncompetitive telecommunications services. Competitive services as "not * * * subject to regulation of prices by the commission" under any circumstances. Wyo. Stat. § 37–15–202.

An EAS, however, is categorized as a "noncompetitive" service. The Telecommunications Act allows the PSC to regulate the rates of noncompetitive services, but only in limited circumstances and in limited ways. Normally, price schedules for noncompetitive services will be filed with the PSC pursuant to Wyo. Stat. § 37–15–204(a), which provides, in relevant part:

> (a) A local exchange company shall file with the commission, in such form and detail as the commission may require, schedules showing all competitive and non-competitive telecommunications services terms, conditions, and prices * * * currently in effect and charged to customers by the company in this state. All prices for new noncompetitive telecommunications services, and any change in prices for noncompetitive telecommunications services, shall be filed thirty (30) days prior to the proposed effective date unless a shorter filing period is authorized by the commission. No price increase for a noncompetitive service shall be effective unless the customer has been given notice by the provider at least one (1) full billing cycle prior to the proposed increase. * * * Rules, regulations, policies, practices and other requirements * * * relating to noncompetitive services shall be subject to the same requirements under this chapter as the prices of noncompetitive services.

If the PSC finds the proposed rates unreasonable, the PSC has the authority to set them aside. Wyo. Stat. § 37–15–405.[1]

---

1. Wyo. Stat. § 37–15–405 states, in pertinent part:

 Any person, and the commission on its own motion, may complain to the commission concerning the reasonableness of the price of any noncompetitive telecommunications service. Any notice and hearing of any complaint shall be in accordance with the Wyoming Administrative Procedure Act and this chapter. The commission shall only set aside any price it finds after notice and hearing to be unreasonable or unreasonably discriminatory. If the commission sets aside a price as unreasonable or unreasonably discriminatory, the telecom-

The PSC's authority to regulate the price of noncompetitive services is found in Wyo. Stat. § 37–15–203:

(a) Prices for telecommunications services which have not been determined by the legislature or the commission to be competitive shall be regulated by the commission in accordance with this section.

(b) The prices for any local exchange company may contain provisions for incentives for improvement of the company's performance or efficiency, lowering of operating costs, control of expenses or improvement and upgrading or modernization of its services or facilities. *Any local exchange company may apply* to the commission for incentives and innovative or nontraditional price regulation, including price indexing. *The commission shall issue a final order approving, modifying or rejecting any application made under this subsection* within one hundred eighty (180) days of the filing date of the application with the commission. If no order is issued by the commission within the one hundred eighty (180) day period, the application shall be deemed approved as filed. *If during consideration of an application for regulation under this subsection, the commission materially alters the plan as filed in the application, the applying local exchange company may notify the commission in writing,* at any time, but not later than sixty (60) days after any final commission order on the application, *that it elects not to be price regulated as approved by the order.* The local exchange company's prices shall then be regulated as they were prior to the application until such time as a new application is filed, approved and accepted.

(c) During the transition to total service long-run incremental costs pursuant to W.S. 37–15–402, noncompetitive services prices shall be established in public hearing in accordance with the Wyoming Administrative Procedure Act and other applicable provisions of this chapter.

(d) Any holder of a certificate of public convenience and necessity to provide local exchange service may elect to be regulated by a price index approved by the commission. The price index shall only apply to noncompetitive services offered by the exchange company. The commission may approve indexes which provide additional flexibility for nonessential telecommunications services and nonaccess services.

(Emphasis added.)

The PSC insists that because the EAS could not be implemented in this instance without unduly burdening the Rock River residents, the only reasonable interpretation of the language in Wyo. Stat. § 37–15–203(c) is that the legislature intended to give the PSC the authority to set rates for noncompetitive services, after a public hearing, as an extension of its authority to approve nontraditional methods of price regulation found in Wyo. Stat. § 37–15–203(b). We disagree.

The statutory language in the Telecommunications Act is clear and unambiguous. The PSC fails to acknowledge that the Telecommunications Act expressly limits the PSC's powers to: (1) setting aside an unreasonable rate which has been filed, or approving, modifying, or (2) rejecting a local exchange company's application for incentives or nontraditional price regulation.

The PSC may not sidestep the legislature's clear limitation of its powers, no matter how pristine its motives may be. Moreover, the legislature appears to have anticipated the resistance to the abrogation of the PSC's prior rate-making powers in Wyo. Stat. § 37–15–408. This statute specifically lists the PSC's statutory powers which carry over from the Public Utilities Act to the Telecommunications Act. Notably, not one of the statutes which formerly granted rate-making powers to the PSC is included in the Telecommunications Act. The legislature's detailed omission of these statutory provisions serves to remove any doubt as to the very limited rate-making powers which remain with the PSC.

munications company shall have sixty (60) days to file a new price which is reasonable. The company shall refund any charges found to be unreasonable as ordered by the commission.

Our conclusion is further supported by Wyo. Stat. § 37–15–406, which provides in part:

> (b) Any customer, and the commission on its own motion, may complain concerning the quality of service provided by a telecommunications company. A complaint shall be noticed and heard as provided for in the Wyoming Administrative Procedure Act. The commission, after notice and hearing, may direct the telecommunications company to take whatever remedial action is technically feasible and economically reasonable to provide reasonably adequate service. The commission shall authorize a telecommunications provider to recover the cost of compliance with any commission order under this section.

The PSC expressly found that the EAS would enhance the quality of service, and that U S West had submitted appropriate calculations for the actual lost revenues for both itself and Union. The statute clearly provides that the telecommunications provider recover the cost of compliance with the PSC's order. However, the PSC ordered U S West to partially recover Union's costs as well. There is nothing in the Telecommunications Act which authorizes the PSC to make this demand.

### B. Authority to Convert the Rate Schedule Submitted on Order of PSC to an Application for Rate Regulation

In response to U S West's petition for rehearing, the PSC announced for the first time that the Laramie/Rock River EAS schedule submitted by U S West would be converted into an application for "innovative and nontraditional" price regulation. While a bold stroke, it was made without statutory authority.

As stated above, Wyo. Stat. § 37–15–203(b) limits the PSC's authority to set rates to situations in which a local exchange company files an application for price regulation pursuant to that section. In this case, the petition for an EAS was initiated by citizens in the Rock River area. U S West did not apply for nontraditional or innovative price regulation, but instead responded to the PSC's order and submitted information. We can only agree with U S West that the PSC's decision to suddenly convert a routine EAS proceeding into an application by the company for innovative price regulation appears to be an extravagant attempt to avoid the statutory limitations placed upon the PSC's rate-making powers.

### V. CONCLUSION

The Telecommunications Act limits the PSC's rate-making powers to the approval, modification, or rejection of an application, submitted by a local exchange company, for innovative and nontraditional price regulation. The PSC does not have the power to set rates for an EAS arising from a citizen-initiated petition. The order of the PSC setting rates and providing payment from U S West to Union to offset Union's loss of revenue exceeds the PSC's statutory authority. Therefore, the Memorandum Opinion, Findings and Order of the PSC issued December 18, 1995 is reversed and the matter remanded in accord with this opinion.