AMOCO PRODUCTION COMPANY and
Amoco Rocmount, Appellants
(Petitioners),

v.

WYOMING STATE BOARD OF EQUALI-
ZATION; Dennis W. Tippets, in his offi-
cial capacity as acting chairman, Board
of Equalization; and Marvin Applequist,
in his official capacity as a member of
the Board of Equalization, Appellees
(Respondents).

Amoco Production Company and Amoco
Rocmount, Appellants (Petitioners),

v.

Wyoming State Board of Equalization;
Dennis W. Tippets, in his official capaci-
ty as acting chairman, Board of Equali-
zation; and Marvin Applequist, in his
official capacity as a member of the
Board of Equalization, Appellees (Re-
spondents).

Nos. 98–66, 98–67.

Supreme Court of Wyoming.

April 10, 2000.

Representing Appellants: Algirdas Liepas of Wiederspahn, Liepas & Reese, P.C., Cheyenne, Wyoming; and John L. Bordes, Jr., Denver, Colorado.

Representing Appellees: William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Kathleen A. "Cindy" Lewis, Special Assistant Attorney General, Cheyenne, Wyoming.

Representing Board of County Commissioners of Uinta County, Wyoming, Amicus Curiae: Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Zerga, P.C., Cheyenne, Wyoming; and Thomas E. Barnes, Uinta County Attorney, Evanston, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The question before this Court involves the tension between the statutory functions assigned to the Department of Revenue (the Department) and those assigned to the Board of Equalization (the Board) in the context of an appeal to the Board from a final decision of the Department pursuant to Wyo. Stat. Ann. § 39-1-304 (Michie 1997).[1]

The primary problem is presented by the departure of the Board from its role of reviewing a final decision of the Department and instead proceeding to "prescribe the system of establishing the fair market value of [the] property" of Amoco Production Company and Amoco Rocmount (collectively Amoco) in its Findings of Fact–Conclusions of Law–Order. The Department's decision that was before the Board on appeal established audit related valuations of gas, sulfur, natural gas liquids and condensate production in Uinta County. Amoco contends that the Board improperly valued the production in issue; denied Amoco's rights to due process, equal protection and equal and uniform taxation in violation of both the Wyoming Constitution and the Constitution of the United States; improperly imposed interest charges upon Amoco; and improperly affirmed the imposition of a penalty on Amoco. We reverse and remand this case to the Board for a new hearing because of its departure from its adjudicatory role to assume the function of prescribing the system of establishing fair market value statutorily assigned to the Department. In so doing, we address only those other issues that are likely to arise in the new hearing.

This statement of the issues is found in the Brief of Appellants, filed by Amoco Production Company and Amoco Rocmount:

1. Did the Board improperly value Amoco's mineral production by refusing to value Amoco's production based on actual costs?

2. Was Amoco denied its constitutional rights to due process, equal protection and uniform taxation under the United States Constitution and the Wyoming Constitution?

3. Did the Board improperly impose interest when it endorsed the prolonged delay in processing amended returns and failed to properly determine Amoco's total tax liability on a state and county level?

---

* Retired November 2, 1998.

1. In 1998, the Legislature recodified Title 39 of the Wyoming Statutes Annotated, and the provisions relating to the Department of Revenue and the Board of Equalization are now found in Wyo. Stat. Ann. §§ 39-11-102, 39-11-102.1, and 39-11-109(b)(i) (Lexis 1999).

4. Did the Board improperly affirm the imposition of a penalty on Amoco under W.S. § 39–6–307(b) based on the record?

This Statement of the Issues is found in the Brief of Appellee, filed on behalf of the Wyoming State Board of Equalization:

I. Did the Board of Equalization properly exercise its authority in determining the fair market value of Amoco's production in this contested case?

II. Did the Board deny Amoco any constitutional rights in this contested case?

III. Did the Board properly determine the amount of interest owed by Amoco for its failure to timely report and pay severance and ad valorem taxes?

IV. Did the Board properly impose severance tax penalty for Amoco's failure to fully and accurately report mineral production, values, revenues and tax liability?

This statement of the issues is found in the Brief of the Board of County Commissioners of Uinta County, as *Amicus Curiae*:

A. Under circumstances in which a mineral taxpayer reports its production to the State under oath, is assessed for severance and *ad valorem* tax purposes based on those reports, and fails to object to the assessment pursuant to Wyo. Stat. 39–2–201(d), may the taxpayer change its previously claimed processing costs to shelter revenues discovered in audit?

B. Does the Board's decision precluding Amoco from changing its claimed processing deductions in defense to an audit deny Amoco its constitutionally protected due process and equal protection rights?

C. Where a taxpayer causes delay in the completion of a tax audit, and fails to utilize the remedy provided by statute to toll the running of interest on its *ad valorem* tax debt, was the Board's imposition of interest on the debt erroneous?

Both of the Amoco entities are Delaware corporations which, in their collective capacity as Amoco, owned oil and gas rights in Uinta County. The gas that was produced required processing to be marketable, and in 1980, Amoco entered into a contract with three other corporations to construct and operate the Whitney Canyon gas processing plant. The contract, known as the C & O Agreement, provided that the Whitney Canyon plant would retain twenty-five percent of the marketable goods it produced in payment for its services. The revenues from the retained products then were divided among the owners in shares proportionate to their shares of ownership.

Amoco had a contract to sell its processed natural gas to one purchaser (NGPL) at a fixed price for the production years 1983 through 1987. From 1983 until March of 1985, Amoco reported to the Department the full contract price for the natural gas sold to NGPL. NGPL, however, actually was paying less than the contract price, and in March of 1985, Amoco elected to report only the amounts it actually received. Subsequently, Amoco sued NGPL for the balance of the contract price that was due, and that case was settled in June of 1988 for $189 million dollars.

In 1986, the Department, then still a division of the Board, commenced an audit of Amoco's gas production processed by the Whitney Canyon plant. The audit initiated by the Department never was completed, and in 1988, the Department contracted with an independent auditor to resume the audit. The following year, the state legislature created the Department of Audit (DOA). Wyo. Sess. Laws ch. 210 (1989). That same year, the DOA took over the audit of Amoco's production that was processed by the Whitney Canyon plant. In addition, the DOA commenced audits of Amoco's natural gas production for 1984 through 1988 from three other processing plants, Painter Complex, Ryckman Creek, and Anschutz Ranch East. In the course of those audits, the DOA decided that it was appropriate to audit separately the Amoco settlement with NGPL.

In the meantime, in November of 1988, Amoco filed amended tax returns relating to the production years 1983 through 1988, which reflected the settlement made with NGPL. Those amended tax returns were based upon Amoco's actual costs of production, rather than a twenty-five percent pro-

cessing allowance, which Amoco had previously used in its reports. The amended returns were not processed because the Board had agreed in a 1987 meeting to suspend processing of Amoco's returns until the production audits had been completed. Amoco continued to file numerous amended returns.

In July of 1991, preliminary findings on the Whitney Canyon audit, based on the twenty-five percent allowance for processing according to the C & O Agreement were issued by the DOA. The preliminary findings showed that Amoco owed taxes in excess of $7 million and also interest in excess of $7 million. By a letter sent on November 26, 1991, Amoco took exception to these preliminary findings, arguing specifically that the DOA should use actual production costs rather than the twenty-five percent allowance. Some two years later, revised findings were issued by the DOA which used the actual costs sustained by Amoco. According to the revised findings, Amoco owed taxes of just over $4 million, but interest and penalties were not a part of the findings. Then, in February of 1994, the Department notified Amoco that as a result of the DOA audits of Whitney Canyon, Painter Complex, Ryckman Creek, and Anschutz Ranch East, as well as the NGPL settlement, Amoco owed taxes, interest, and penalties totaling $45,208,-338.00. Amoco appealed from that decision to the Board the following month. Uinta County sought, and was granted, permission to intervene. The hearing on appeal was scheduled to begin before the Board on September 25, 1995. On the first day of the hearing, Amoco and the Department executed a stipulation regarding the taxable value of the NGPL settlement, and that issue was removed from the appeal. The hearing on the remaining issues began as scheduled and was completed on November 9, 1995. Amoco and the Department then submitted written closing arguments together with proposed findings of fact and conclusions of law.

The Board's Findings of Fact–Conclusions of Law–Order was entered on February 28, 1997. Following its rules and regulations, the Board withheld entry of a final order, but it did order the parties to submit within ninety days numerical calculations based upon the findings and conclusions of the Board. The calculations were to address five items: (1) ad valorem tax; (2) interest on the ad valorem tax; (3) severance tax; (4) interest on the severance tax; and (5) penalties. Amoco and the Department could not agree on the numerical calculations, and each submitted its own version. Amoco's version would have required payment of taxes and interest totaling $31,636,033.00, with no penalties being assessed. The Department calculated the taxes, interest, and penalties at $41,075,963.00, and Uinta County asked for ad valorem tax and interest totaling $24,572,-751.00, without any position as to severance tax or penalties. The Board proceeded to consider the submissions by the parties, and issued a Supplemental and Final Findings of Fact, Conclusions of Law, Order on October 15, 1997. The Board primarily relied on the figures presented by the Department and Uinta County, reaching an ultimate conclusion that Amoco owed taxes, interest, and penalties in excess of $53 million. Amoco filed a Motion for Reconsideration in accordance with the Board of Equalization Rules and Regulations, Chapter 2, Section 32(c), which was denied by the Board. Amoco then filed identical appeals in the district courts of the First and Third Judicial Districts, pursuant to Chapter 2, Section 34 of the Board of Equalization Rules and Regulations. The district court in the First Judicial District granted Amoco's motion for a change of venue to the Third Judicial District, and that district court subsequently certified both appeals to this Court in accordance with W.R.A.P. 12.09(b). Upon an appropriate motion from Amoco, the cases were consolidated in this Court.

 Our usual rule when we are called to review the decision of an administrative agency is that considerable deference is accorded to the findings of fact of the agency, and this Court does not disturb them unless they are contrary to the overwhelming weight of the evidence. *Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 875 (Wyo. 1994). In this instance, the questions presented by the parties point to problems of law, and we see no necessity to address the findings of fact by the Board, other than in

the context of the statutes or the law. An agency's conclusions of law can be affirmed only if they are in accord with the law. *Matter of Corman*, 909 P.2d 966, 970 (Wyo. 1996). Our function is to correct any error that an agency makes in its interpretation or application of the law. *Matter of Gneiting*, 897 P.2d 1306, 1308 (Wyo.1995). In addition, Wyo. Stat. Ann. § 16–3–114(c)(ii)(C) (Lexis 1999) requires a court on judicial review to invalidate agency findings or actions made without authority.

We begin by summarizing the statutory structure of the Department and the Board. The Board is a constitutional body, and the legislature is required to establish a Board of Equalization charged with the duty to equalize the valuation of all property in the state. Wyo. Const. art. 15, §§ 9 & 10. In Wyo. Sess. Laws. ch. 174, §§ 39–1–101, *et seq.* (1991), the legislature created the Department as a separate agency from the Board, and assigned to it administrative functions relating to taxation and revenue that previously had been the responsibilities of the Board. *Union Pacific Resources Co. v. State*, 839 P.2d 356, 363 (Wyo.1992) (*UPRC I* ). It specifically charged the Department with the function of valuation of property for purposes of tax assessment, "while the Board 'became an independent quasi-judicial organization with constitutional and statutory duties to equalize valuation and decide disagreements regarding statutory provisions affecting the assessment, levy and collection of taxes.' *UPRC I*, 839 P.2d at 363." *Union Pacific Resources Co. v. State Bd. of Equalization for the State of Wyo.*, 895 P.2d 464, 466 (Wyo.1995) (*UPRC II* ).

This division of functions is traceable in several ways through the statutes. For example, Wyo. Stat. Ann. § 39–2–201 (Michie 1997) provided, in pertinent part:

(a) The department shall annually value and assess the following property at its fair market value for taxation:

(i) The gross product of all mines and mining claims[.]

Similarly, in Wyo. Stat. Ann. § 39–2–202(a) (Michie 1997), the Department is assigned the task of annually valuing the gross product of all mines and mining claims. This Court has extended the statutes to producers of natural gas, even though the specific language alludes to mines and mining claims. *Chevron U.S.A., Inc. v. State*, 918 P.2d 980, 983 (Wyo.1996). The Board, in addition to its constitutionally mandated duties, is to review final decisions of the Department. Wyo. Stat. Ann. § 39–1–304(a).

The Court had no occasion in either *UPRC I* or *UPRC II* to directly concern itself with the review or appellate function of the Board. That function is described in various ways. In Wyo. Stat. Ann. § 39–1–302 (Michie 1997) provision is made for a person aggrieved by a final decision of the Department to appeal to the Board pursuant to the Board's rules and regulations. The statute requires that the Department shall, as specified by the Board's rules and regulations, transmit to the Board the complete record of its action from which the appeal is taken. In a subsequent section of the statute, Wyo. Stat. Ann. § 39–1–304(a), the Board is charged with hearing appeals from county boards of equalization and reviewing final decisions of the Department under the contested case procedures of the Wyoming Administrative Procedure Act. This statutory approach suggests a *de novo* review rather than a record review. In Wyo. Stat. Ann. § 39–1–304(a)(ix), the Board is charged with holding hearings after due notice in the manner and form provided in the Wyoming Administrative Procedure Act and its rules and regulations. In the same provision, it is authorized to contract with an attorney to perform the functions of a presiding officer provided that the attorney is knowledgeable and qualified in the particular areas of taxation which are the subject of the appeal.

This background brings us to the consideration of Amoco's primary contention that the Board exceeded its authority when it ruled that Amoco must use the hypothetical twenty-five percent processing allowance rather than the actual costs of processing in connection with the valuation of this product. The Board concluded that, by using the actual processing and transportation costs, Amoco and the Department had changed the methodology by which Amoco's taxes were computed. The Board also declared that "the

[Department], not the taxpayer, has the authority to change valuation methods, but can only do so if it finds one of its employees has committed an unauthorized act or error." The Board relied upon one of its prior decisions, *In the Matter of the Appeal of Mountain Cement Co.*, SBOE Nos. A–88–51 and 89–81 (May 9, 1991), in stating this limitation.

Amoco urges upon this Court that the standard articulated in *Mountain Cement Company* "has never been adopted pursuant to the Wyoming Administrative Procedure Act, is contrary to the Rules, and has never been endorsed by this Court, because it is specifically contrary to the decisions of this Court." In addition, Amoco asserts that even if the *Mountain Cement Company* standard is valid, it is not applicable to this case because there was no change in methodology. The response of the Board to this argument is that it acted within its adjudicatory powers in both *Mountain Cement Company* and the instant case, and is not required to promulgate rules to support every conclusion of law. Amoco's argument on this point is more persuasive because of the obvious result of an invasion of the statutory authority of the Department by virtue of the ruling by the Board. We are satisfied that the legislature did not intend that result.

■ Amoco and the Department had agreed that the actual costs should be relied upon instead of the twenty-five percent allowance, but they could not agree as to which costs were to be utilized in connection with the formula. The issue that was properly before the Board was whether Amoco or the Department was correct with respect to those costs, and we previously have acknowledged the authority of the Board to decide that question. *Amax Coal West, Inc. v. Wyoming State Bd. of Equalization*, 896 P.2d 1329, 1334 (Wyo.1995). Instead of adjudicating the dispute between Amoco and the Department, however, the Board in this instance determined to arrive at its own valuation. The statutes that we have alluded to

earlier are clear with respect to the assignment of the valuation function to the Department, not the Board.

We have summarized previously the legal proposition with respect to the authority of an administrative agency:

> An administrative agency is limited in authority to powers legislatively delegated. *Hupp v. Employment Sec. Com'n of Wyoming*, 715 P.2d 223 (Wyo.1986); *Continental Pipe Line Co. v. Belle Fourche Pipeline Co.*, 372 F.Supp. 1333 (D.Wyo.1974). "Administrative agencies are creatures of statute and their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim." 1 Am.Jur.2d *Administrative Law* § 70, at 866 (1962).

*UPRC I*, 839 P.2d at 370. In a more recent case, we also adopted a policy of strict construction:

> The language of a statute will be strictly construed when determining the powers granted to an agency. *Tri County Telephone Ass'n, Inc. v. Wyoming Public Service Com'n*, 910 P.2d 1359, 1361 (Wyo. 1996); *Montana Dakota Utilities Co. v. Public Service Com'n of Wyoming*, 847 P.2d 978, 983 (Wyo.1993).

*US West Communications, Inc. v. Wyoming Public Service Com'n*, 958 P.2d 371, 374 (Wyo.1998). The Board went beyond its statutory grant of authority when it proceeded to value Amoco's property according to its order. We invalidate that decision as being contrary to law, pursuant to Wyo. Stat. Ann. § 16–3–114(c)(ii)(C), and remand the case for a new hearing.

Even if the Board had correctly applied the *Mountain Cement Company* standard, we would be forced to reverse its decision because there was in this instance no change in the valuation method. The Board correctly identified Amoco's initial valuation method as the netback method of valuation.[2] Amoco and the Department did not change the uti-

---

2. The Board has previously described the netback method as:

 a cost approach to value which relies on the following formula:

 Sales value – (minus) value added by processing and transportation after the point at

which mining is completed = Fair cash market value of the mineral at the mine mouth.

*In the Matter of the Appeal of Amax Coal Co.*, SBOE No. 92–198, Wyoming State Tax Reporter (CCH) ¶ 200–528 at 11,277 (1994).

lization of the netback method, but they agreed to adjust the formula under the netback method in order to produce a more accurate result. It is true that the change resulted in a lower tax liability for Amoco, but it was within the authority of the Department to make that determination.

The only way to harmonize the various descriptions of the review or appeal function of the Board is to hold that the Board is limited to an adjudicatory decision making its review on the record. It is only by either approving the determination of the Department, or by disapproving the determination and remanding the matter to the Department, that the issues brought before the Board for review can be resolved successfully without invading the statutory prerogatives of the Department. The statutory mandate to the Board is not to maximize revenue or to punish nettlesome taxpayers, but to assure the equality of taxation and fairly adjudicate disputes brought before it. It is from this premise that we offer some guidance with respect to issues likely to arise in the new hearing before the Board. This Court will concern itself with issues relating to allowable deductions, interest, and penalty.

Amoco correctly argues that this case was before the Board for a decision on whether certain deductions were or were not allowable. We have no occasion to divest the Board of its prerogatives in the resolution of that question, but we do hold that the Board must decide the question before it in accordance with applicable law. It must refrain from usurping the valuation function assigned to the Department, even if the Department should acquiesce.

The next issue presented by Amoco is that the interest imposed by the Board should be abated or suspended because of the long delays in completing the audits and the decision of the Board not to process Amoco's amended returns until the audits were completed. No Wyoming statute or any decision of this Court specifically addresses that proposition, but Amoco's contention is supported in other forums. The Internal Revenue Code, 26 U.S.C. § 6404(e)(1), allows for the abatement of interest assessed due to "any unreasonable error or delay by an officer or employee of the Internal Revenue Service." The Michigan Court of Appeals has held that it was not equitable to assess interest when the delay in resolving the taxpayer's liability was attributable to a state agency. *Master Craft Engineering, Inc. v. Department of Treasury*, 141 Mich. App. 56, 366 N.W.2d 235, 244 (1985). *See also Holloway Sand & Gravel Co., Inc. v. Department of Treasury*, 152 Mich.App. 823, 393 N.W.2d 921, 927–28 (1986). A New York court reduced the interest rate on unpaid estate taxes when the delay in payment was attributable to a federal audit respecting the valuation of those assets. *In re Nowicki's Estate*, 76 Misc.2d 384, 351 N.Y.S.2d 40, 42 (1973).

Amoco cites one of the Board's own decisions as supporting the abatement of interest in this case. The Board said:

> The State * * * has at least three obligations: (a) to reasonably review taxpayer information received, and notify the taxpayer of any apparent errors; (b) to follow the laws, rules, instructions and recognized appraisal principles in the valuation of the product; and (c) to notify the taxpayer of the value and tax due.

*In the Matter of the Appeal of PG & E Resources Company et al.*, SBOE No. 90–35, Wyoming State Tax Reporter (CCH) ¶ 200–457, at 10,994 (1992). The Board ruled in that case that if the State fails in its obligations, the taxpayer is not delinquent when the correct tax ultimately is assessed. It follows that to the extent, if any, the Board finds the State has failed in its obligations to Amoco, it should not impose interest.

Amoco also appeals from the imposition of a penalty by the Board. The authority of the Board to impose a penalty on unpaid severance tax is found in Wyo. Stat. Ann. § 39–6–307 (Michie 1997), and the penalty is limited by statute to twenty-five percent of the tax due. The Board calculated Amoco's unpaid severance tax at $9,592,-164.00, and pursuant to the request of the Department, imposed a penalty in the amount of $2,280,503.00, approximately 23.77 percent of the tax due. For support of its objection to the penalty, Amoco presents the

decision of the Board in *In the Matter of the Appeal of General Chemical Corp.*, SBOE No. A–89–67, Wyoming State Tax Reporter (CCH) ¶ 200–305 at 10,517 (1990). In that instance, the Board said it would impose the maximum twenty-five percent penalty only in instances of gross negligence or willful disregard of the statutes. This indeed is an accurate reading of *General Chemical Corp.*, but Amoco overlooks an important statutory change. At the time it decided *General Chemical Corp.*, the Department had the option of imposing a penalty,[3] the statute in effect when it decided this appeal provided for a mandatory penalty,[4] but limited that penalty to a ceiling of twenty-five percent. Consequently, *General Chemical Corp.* is not persuasive on the assertion by Amoco that the penalty is excessive.

The argument presented by Amoco that the decision of the Board is not in compliance with Wyo. Stat. Ann. § 39–6–307 is more persuasive. We read the language of the statute to require computation of penalties based on the entire production of a taxpayer within the state. The Department may not impose, nor could the Board affirm, a penalty against Amoco based on some lesser figure than Amoco's entire Wyoming production. Upon remand, the Board must consider all of Amoco's production in Wyoming in order to determine whether a penalty is warranted; it cannot impose the penalty on a piecemeal basis as was done in this instance.

In summary, we hold that the Board exceeded its statutory authority by adopting the role of the Department in valuing the property subject to taxation rather than performing its assigned adjudicatory function. The record discloses that the audit by the State was inefficient and ineffective from beginning to end, and the State should not endeavor to collect interest which accrued due to any delays that it caused. The penal-

ty applied to Amoco was not calculated in accordance with law. All this leads to a conclusion that the Board did not treat Amoco equally and fairly in this instance.

The decision of the Board is reversed, the case is remanded for a new hearing and further proceedings in accordance with this opinion.

---

3. The wording of Wyo. Stat. Ann. § 39–6–307(b) (Michie Cum.Supp.1985) at the time of *General Chemical Corp.* was:

 If any person remits less than ninety percent (90%) of the amount due for any quarterly tax payment under W.S. 39–6–304 the department *may* impose a penalty of not more than twenty-five percent (25%) of the amount due.

 (Emphasis added.)

4. The wording of Wyo. Stat. Ann. § 39–6–307(a) (Michie 1997) was:

 If any person fails to make or file a return and remit the tax as required by W.S. 39–6–304, the department *shall* impose a penalty of five percent (5%) of the taxes due for each thirty (30) day period, or fraction thereof[.]

 (Emphasis added.)