2002 WY 6

**In the Matter of the Worker's Compensation Claim of:**

**Bryan T. GOE, Appellant (Petitioner/Employee),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Respondent/Objector).**

**No. 00–114.**

Supreme Court of Wyoming.

Jan. 22, 2002.

---

F. Gaston Gosar of Nicholas Law Office, LLC, Riverton, WY. Argument by Mr. Gosar, Representing Appellant.

Gay Woodhouse, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General. Argument by Mr. Delicath, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶1] Appellant Bryan T. Goe, Jr. appeals from the order of the district court which affirmed the Office of Administrative Hearing's (OAH) decision to average his monthly wages and to exclude gratuities in calculating his temporary total disability (TTD) benefits.

[¶2] We affirm in part and reverse and remand in part.

## ISSUES

[¶3] Goe presents three issues for review by this court:

1. Did the Hearing Examiner improperly calculate temporary total disability benefits based on an average of Appellant's earnings prior to the injury rather than his actual monthly earnings at the time of injury?

2. Was the Hearing Examiner's decision not to include hunting gratuities in calculating temporary total disability benefits arbitrary, capricious, an abuse of discretion and contrary to law?

3. Did the Hearing Examiner improperly average four months of Appellant's earnings rather than three months as required by the Wyoming Workers' Safety & Compensation Rules and Regulations in calculating temporary total disability benefits?

## FACTS

[¶4] On October 16, 1997, while Goe was working as a hunting guide for Crystal Creek Outfitters, he was kicked in the right shin by a horse. Goe required hospitalization at least twice as a result of this injury, and both parties agree that Goe suffered from deep venous thrombosis and/or reflex sympathetic dystrophy.

[¶5] Goe requested TTD benefits, which were awarded through July 31, 1998. When Goe requested continued TTD benefits, an administrative hearing was conducted. The hearing examiner found that Goe was entitled to further TTD benefits and averaged Goe's earnings for the months of July through October to determine his monthly

benefit amount. The hearing examiner did not include gratuities when it averaged Goe's monthly earnings. Goe appealed this decision to the district court. The district court affirmed this part of the order and reversed other portions of the order, which have not been appealed and are, therefore, not relevant to this appeal. Goe appeals the unfavorable portion of the district court's order.

## STANDARD OF REVIEW

[¶6] Typically, when this court reviews the decision of an administrative agency, we afford considerable deference to the findings of fact of the agency, and we will not disturb them unless they are contrary to the overwhelming weight of the evidence. *Amoco Production Co. v. State Bd. of Equalization,* 12 P.3d 668, 671 (Wyo.2000). In this instance, however, the issues presented require us to interpret various statutes. "Statutory interpretation is a question of law. This Court affirms an agency's conclusions of law when they are in accordance with the law. When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors." *Petra Energy, Inc. v. Dep't of Rev.,* 6 P.3d 1267, 1270 (Wyo. 2000) (citations omitted).

## DISCUSSION

### A. Averaged Wages

[¶7] Goe contends that the hearing examiner improperly averaged his wages when it calculated the TTD benefit amount. He maintains that the final figure should have been calculated by using only the amount of his salary during the month in which he was injured. The Wyoming Workers' Compensation Division (the Division) responds that Goe did not have a regular monthly income; and, therefore, he did not have a fixed amount of monthly earnings from which the hearing examiner could accurately derive a benefit amount that would be representative of an actual monthly earnings amount.

[¶8] Had Goe been able to finish working the month of October, both he and his employer agreed that he would have earned $1,600.00. Instead of basing Goe's TTD ben-

efit amount on this $1,600.00 figure, the hearing examiner averaged Goe's earnings using that amount as well as the amounts of his earnings for the previous three months. Goe's earnings fluctuated considerably over the course of this four-month period; and, although Goe argued the fluctuation was due to a contract dispute with his employer, the hearing examiner reasoned that an average would best reflect the amount of earnings Goe lost because of his injury.

[¶ 9] The calculation of TTD benefits is governed by Wyo. Stat. Ann. § 27-14-403(c) (Lexis 1999), which provides in pertinent part:

> For temporary total disability under paragraph (a)(i) of this section, the award shall be paid monthly at the rate of two-thirds ( ⅔) of the injured employee's actual monthly earnings at the time of injury but not to exceed the statewide average monthly wage for the twelve (12) month period immediately preceding the quarterly period in which the injury occurred as determined pursuant to W.S. 27-14-802.

The term "actual monthly earnings" is defined by Wyo. Stat. Ann. § 27-14-403(j) as "the injured employee's actual monthly earnings at the time of injury excluding any payment for casual or unscheduled overtime and any fringe benefit." Goe argues that pursuant to this definition, the hearing examiner should have used the figure he would have earned in October had he not been injured to calculate his benefit amount. The Division counters that this definition is unavailing because Goe did not have "actual monthly earnings." The Division quotes the *Merriam Webster's Collegiate Dictionary*, p. 755 (10th ed.1998) definition of monthly as meaning "occurring or appearing every month."

[¶ 10] Both parties acknowledge the case of *Matter of Hasser*, 647 P.2d 66 (Wyo.1982); but, not surprisingly, they disagree on its applicability to the case at bar. In that case, Hasser's hours fluctuated as did his rate of pay. The Division based Hasser's disability payments on an average of several weeks' wages rather than solely on the week of his injury. Because our analysis in that case is particularly appropriate to the current case,

we include a lengthy excerpt from that opinion:

> It has long been recognized in Wyoming that the construction placed upon a statute by those charged with its execution is entitled to some deference. *Demos v. Board of County Commissioners of Natrona County*, Wyo., 571 P.2d 980 (1977). This court, when construing a statute, is bound to consider the interpretation of a statute made by the agency administering it. *Langdon v. Lutheran Brotherhood*, Wyo., 625 P.2d 209 (1981). It is clear that those administering the Worker's Compensation Act have devised a method of computing an hourly wage earner's monthly rate. They multiply the hourly rate by the hours worked in a week, times the fifty-two weeks in the year, and divide by twelve months. This formula seems to work reasonably well and does result in a figure which approximates a monthly rate of pay. Accordingly we have no quarrel with its use so long as the resulting figure fairly represents the parties' understanding. It cannot be applied with precision here because of the variable hours per week put in by appellant under the terms of his employment. The clerk, through an established practice and agency interpretation, adopted an averaging process to reach what would be considered a monthly actual rate of pay fair to both employee and employer as well as the industrial accident fund. We approve these practices under the existing statute.
>
> It is the court's obligation to make sense out of a statute and give full force and effect to the legislative product; in construing statutes, intention of the law-making body must be ascertained from the language of the statute as nearly as possible. A statute must not be given a meaning which would nullify its operation if it is susceptible of another interpretation. *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980). We point out that "actual monthly rate of pay" does not refer specifically to either a salary of a fixed amount or wages paid at an hourly rate for any particular number of hours. Since it is in such general terms, it is capable of being applied in

a range of situations, including those that are variable. The term "actual" according to Webster means existing in reality, not merely possible but real. Monthly is a particular span of time. So, what is appellant really paid during a period of a month? The statute does not specify which month is used as a measure, for example, not the month during which the injury occurred, nor the month preceding, or any other particular month. The generality of the phrase lends itself to a reasonable interpretation depending upon the circumstances, and elasticity that permits a fair benefit payment. Statutes should be given a reasonable, practical construction. *State Board of Equalization v. Cheyenne Newspapers, Inc.*, Wyo., 611 P.2d 805 (1980).

While Wyoming's statute is unique, it has characteristics comparable to what prevails in New York. 64 McKinney's Consolidated Laws of New York, Workmen's Compensation Law, § 15, subparagraph 5:

"5. Temporary partial disability. In case of temporary partial disability resulting in decrease of earning capacity, the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the accident and his wage earning capacity after the accident in the same or another employment but shall not exceed in total five thousand five-hundred dollars.

"5-a. Determination of wage earning capacity. The wage earning capacity of an injured employee in cases of partial disability shall be determined by his actual earnings, provided, however, that if he has no such actual earnings the board may in the interest of justice fix such wage earning capacity as shall be reasonable, but not in excess of seventy-five per centum of his former full time actual earnings, having due regard to the nature of his injury and his physical impairment."

In *Reukauf v. Mobil Oil Corp.*, 44 A.D.2d 856, 355 N.Y.S.2d 189 (1974), the claimant's wages fluctuated considerably from week to week, just as here, due to substantial overtime compensation. The court said: "In our view, the only fair method of determining claimant's actual earnings under these circumstances is to select a reasonable period and average his earnings." In such instance, as in the case at bar, actual earnings are the measure, reasonably applied. Averaging is done with actual rates of pay so that the net result is "actual rate of pay."

647 P.2d at 69–70 (footnote omitted).

[¶ 11] Goe argues that the *Hasser* case is distinguishable because Hasser worked various hours and his compensation varied as opposed to Goe's situation where he had a set monthly salary regardless of the number of hours he worked. He also claims that the Workers' Compensation Act has been changed since our *Hasser* decision to include a definition of the term "actual monthly earnings," which identifies the month during which the injury occurred as the month by which to measure benefits. We disagree with Goe's attempts to distinguish the *Hasser* case. The evidence in Goe's case demonstrated that his earnings fluctuated widely from pay period to pay period; and we do not find the definition of "actual monthly earnings" useful in this case because Goe's earnings were not consistent and fixed month after month.

[¶ 12] Because Goe did not have actual monthly earnings, the hearing examiner was required to consult the Division's rules and regulations for guidance. Indeed, administrative rules and regulations have the force and effect of law, and an administrative agency must follow its own rules and regulations or face reversal of its action. *Painter v. Abels*, 998 P.2d 931, 938 (Wyo.2000). Wyoming Workers' Safety and Compensation Rules, Regulations and Fee Schedules, ch.6, § 2(a)(i)(C) (Jan.1997) provides:

In the case where the worker was paid by other than hourly, weekly or monthly rate of pay, verification of average monthly wage must be obtained by the worker from the employer. The worker must be able to provide copies of at least three (3) months of wage history with the current employer. If three (3) months of information is not available from the worker, verification of

average monthly wage must be obtained from the employer.

[¶ 13] We hold that the hearing examiner's decision to average Goe's income to determine the appropriate amount of TTD benefits was appropriate because Goe did not meet his burden to prove his actual monthly earnings were $1,600.00 per month. The evidence presented at the hearing demonstrated that Goe was not paid a rate that could be considered monthly because the amounts varied each month. This is exactly the type of case for which the practice of averaging income is appropriate because Goe's income levels varied so widely. As the Division points out in its brief, this practice is also intended to protect claimants who have variable incomes and get injured during a month in which their income level happens to be at a lower level than usual. Although that is not the situation here, we conclude that the hearing examiner used a reasonable period in averaging Goe's earnings and that an average will produce the most accurate benefit amount.

[¶ 14] Goe earned $560.75 in July, $1,000.00 in August, and $1,500.00 in September. The hearing examiner took these three figures and added them to the $1,600.00 figure that Goe would have earned in October had he been able to finish the month. He then divided that total by four and multiplied this figure by two-thirds to arrive at the benefit amount. Although we concur with most of this calculation, we disagree that the sum total of July through October's earning should have been divided by four. Goe's injury report indicates that Goe began working for Crystal Creek Outfitters on July 16, 1997. The $560.75 in earnings for the month of July, therefore, were only one-half of a month's compensation. Accordingly, we conclude that the sum total of the earnings should have been divided by three and one-half before being multiplied by two-thirds. We reverse and remand this portion of the TTD benefit award for recalculation consistent with this discussion.

### B. *Exclusion of Gratuities*

[¶ 15] Goe next challenges the hearing examiner's decision not to include gratuities when he calculated the TTD benefit amount. The Division counters that Goe failed to establish that the gratuities he received were "received with the knowledge of the employer and reported to the internal revenue service."

[¶ 16] Wyoming Workers' Safety and Compensation Rules, *supra*, ch.1, § 4(iv) (Aug.1997) provides that actual monthly earnings include "[g]ratuities received in the course of employment, from others than the employer, only when such gratuities are received with the knowledge of the employer and reported to the internal revenue service." Goe's employer testified that he did not know whether Goe received any tips and that he did not report any gratuities received by Goe to the internal revenue service. Furthermore, the only evidence that Goe presented that he had reported any gratuities to the internal revenue service was an equivocal statement that "[y]es, I believe I did." The record does not contain a copy of Goe's 1996 tax return by which we could confirm his statement. Goe's equivocal statement that he believed he had reported his gratuities does not satisfy his burden to prove that he in fact did make such a report. We, therefore, find that the hearing examiner did not err when he excluded gratuities from the TTD benefits calculation.

### C. *Use of Four Months In Averaging Income*

[¶ 17] Goe finally criticizes the hearing examiner's decision to use four months of Goe's income when it averaged Goe's earnings to compute the TTD benefit amount. The Division replies that nothing prohibits the use of more than three months in this calculation if the resultant amount best reflects an accurate estimate of the claimant's average monthly earnings.

[¶ 18] Wyoming Workers' Compensation Rules, *supra*, ch.6, § 2(a)(i)(C) (Jan. 1997) provides:

In the case where the worker was paid by other than hourly, weekly or monthly rate of pay, verification of average monthly wage must be obtained by the worker from the employer. The worker must be able to

provide copies of at least three (3) months of wage history with the current employer. If three (3) months of information is not available from the worker, verification of average monthly wage must be obtained from the employer.

[¶ 19] We agree with the Division's argument in its brief to this court that the rule calls for averaging at least three months. The rule does not prohibit the use of more than three months of wage history so long as the final figure best approximates an accurate reflection of a claimant's average monthly income.

[¶ 20] Although testimony varied somewhat as to when Goe became employed by Crystal Creek Outfitters, Goe's injury report that he submitted to the Division indicates that he had been employed with Crystal Creek Outfitters since July 16, 1997. The use of the earnings from July to October was a reasonable period of time over which to derive an average monthly income; but, as we discussed earlier, only one-half of July should be used given that Goe did not begin his employment until half way through the month.

[¶ 21] Affirmed in part and reversed and remanded in part in accordance with this opinion.