2001 WY 84

**PACIFICORP, INC., Appellant (Petitioner),**

v.

**DEPARTMENT OF REVENUE, State of Wyoming, Appellee (Respondent).**

No. 00–155.

Supreme Court of Wyoming.

Sept. 7, 2001.

Representing Appellant: Richard G. Smith of Hawley Troxell Ennis & Hawley LLP, Boise, ID; and W. Perry Dray of Dray, Thomson & Dyekman, P.C., Cheyenne, WY.

Representing Appellee: Gay Woodhouse, Attorney General; Rowena L. Heckert, Deputy Attorney General; Harold E. Meier, Senior Assistant Attorney General; and Jay Jerde, Senior Assistant Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] PacifiCorp, Inc. (PacifiCorp) appealed its ad valorem valuations for tax years 1997, 1998, and 1999 claiming the Department of Revenue (the Department) undervalued its tax exempt pollution control equipment resulting in an overpayment of tax. The State Board of Equalization (the Board) affirmed the Department's action. PacifiCorp filed a petition for review in the district court, and the district court certified the case to this court pursuant to W.R.A.P. 12.09(b).

[¶ 2] This same issue was raised in *PacifiCorp, Inc. v. Department of Revenue*, 13 P.3d 256 (Wyo.2000) (*PacifiCorp I* ), and we affirmed the Department's actions. A petition for rehearing was filed in that case, and we held the petition in abeyance pending our consideration of this case, which involves a full evidentiary hearing on the same issues in later tax years.

[¶ 3]  PacifiCorp contends the Department must utilize the ratio of Wyoming market value to Wyoming book value when determining the market value of the tax exempt property in Wyoming and that amount should be deducted from PacifiCorp's taxable property.  The Department disagrees and relies instead on the ratio of the entire system's market value to system book value.  In addition, the Department contends PacifiCorp failed to carry its burden of proof and the system ratio approach is necessary to assure uniformity among taxpayers.  After reconsideration of the issue with the additional evidence produced by PacifiCorp, we conclude PacifiCorp is correct and, to obtain an accurate valuation of this taxpayer's Wyoming exempt property, the net book value of the exempt property must be reduced by the ratio of the fair market value of Wyoming property to the net book value of that same Wyoming property.

[¶ 4]  We reverse and remand.

## ISSUES

[¶ 5]  PacifiCorp raises the following issue for our review:

I.  Did the State Board err in failing to conclude that the 1997–1999 valuation of PacifiCorp's exempt property by the Department of Revenue was erroneous, and that accordingly PacifiCorp's assessed value for those years exceeded the fair market value of PacifiCorp's property, in violation of W.S. §§ 39–2–102 and 39–2–201(a)?

The Department rephrased the issue as:

I.  Does substantial evidence exist in the record to support the Department's use of the system market value to system book value ratio method to derive the fair market value of PacifiCorp's exempt Wyoming property?

## STANDARD OF REVIEW

■■■  ¶ 6 Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001) delineates the scope of appellate review for agency decisions:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statuto-ry provisions, and determine the meaning or applicability of the terms of an agency action.  In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.  The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In *PacifiCorp I*, we cited *Basin Electric Power Cooperative, Inc. v. Department of Revenue, State of Wyoming*, 970 P.2d 841, 851 (Wyo.1998), for the proper standard of review wherein the situation at issue concerns the Department's choice of accepted appraisal methods.  *PacifiCorp*, 13 P.3d at 259.  The issue in the instant case centers on the proper application of the Department's market-to-book ratio methodology specifically, whether the system value to book ratio or the state value to book ratio should be applied.  The proper application of appraisal methods to the facts is an issue of ultimate fact requiring de novo review.  *Id.* An ultimate fact is a mixture of fact and legal precept.  *Basin Electric Power Cooperative, Inc.*, 970 P.2d at 850.

When an agency's determinations contain elements of law and fact, we do not treat them with the deference we reserve for findings of basic fact.  When reviewing an "ultimate fact," we separate the factual and legal aspects of the finding to deter-

mine whether the correct rule of law has been properly applied to the facts. We do not defer to the agency's ultimate factual finding if there is an error in either stating or applying the law.

*Id.* at 850–51 (citations omitted).

## DISCUSSION

[¶ 7] This rather simple dispute is made exceedingly complex by the nature of the tax computation process and the parties' inability or unwillingness to directly address the rationale for their respective positions. As a public utility, the fair market value of Pacifi-Corp property for tax purposes is determined by the unitary method, which means the value of its entire system is measured by various appraisal methods not at issue here. Those methods establish the value of Pacifi-Corp's integrated, multi-state system, and that value is then reduced for depreciation and obsolescence to reach the fair market value; i.e., what a willing buyer would pay a willing seller for the entire system. Wyo. Stat. Ann. § 39–13–103(b)(ii) (LexisNexis 2001). The result of the appraisal process was a market value for the entire PacifiCorp system of $6,530,000,000.

[¶ 8] After establishing market value for the system, the Department allocates a portion of the total system market value to Wyoming using a long-standing formula. That allocation formula considers the percentage of plant cost (net book less depreciation), product sales, sales revenue, capacity, and generation located in Wyoming. In the case of PacifiCorp's property, that allocation formula results in a higher percentage of the value of the system being allocated to Wyoming (21.8482 percent) than is represented by the net book value of the actual property located in this state (19.685 percent). The parties agree the allocation process concluded PacifiCorp property located in Wyoming is more valuable as compared to its original cost or net book value than its property located in other states. The allocated fair market value of $1,426,687,460 is then subject to tax assessment in Wyoming.

[¶ 9] Before the tax is imposed, the Department must deduct the fair market value of any exempt property actually located in Wyoming, such as pollution control equipment. The problem arises when one attempts to determine the fair market value of the individual tax exempt property located in Wyoming which heretofore has only been valued as an integrated part of the entire system. PacifiCorp's financial statements clearly set out the net book value, sometimes referred to as "cost," of the individual exempt property as $358,684,824. However, since the exempt property is no longer worth its original cost, that number must be adjusted for depreciation and obsolescence. The same methods used for making that adjustment on the system net book value, or cost, cannot be applied to individual property because those methods rely on a consideration of the entire integrated system. Therefore, the Department simply reduced the net book value of the exempt property by the same ratio of market value to book value, which was the result of the adjustment made to the entire system. The Department has historically adjusted the net book value of particular exempt property by calculating what percentage the entire system's fair market value is of the entire system's net book value and applying that percentage to the net book value of the Wyoming exempt property. PacifiCorp's system ratio is 81.8 percent, which results in the Department calculating a fair market value for the exempt property of $293,433,957.

[¶ 10] The Department's past practice rests on the assumption that the Wyoming exempt property has experienced the same depreciation and obsolescence as the entire system. That assumption would certainly be logical and reasonable if, at the outset, the Wyoming property is considered to be of equal value to the system, on a dollar-for-dollar basis, as the rest of the property in the system. In PacifiCorp's case, however, the Department has determined, based on its allocation formula, that the Wyoming property is more valuable to the system as a whole than its property in other states. That allocation formula results in a Wyoming ratio of fair market value to net book value of 91 percent and fair market value for the tax exempt property of $326,462,014. The Department's determination of market value of

the exempt property using the system ratio was $32,050,098 less than that generated by the state ratio urged by PacifiCorp. The Department's market value resulted in less of a deduction and $280,000 more in tax paid than would have resulted from the use of the state ratio. Both parties agree that each dollar of value in the tax exempt property contributes equally to the total system value.

[¶ 11] The Department provided no evidence that the Wyoming tax exempt property, which is essential to the operation of the remaining Wyoming property, is any less valuable to the entire system than the total Wyoming property. Logic dictates the Wyoming tax exempt property should be valued in the same manner as the Wyoming taxable property. Indeed,

> this court has consistently interpreted Wyo. Const. art. 15, § 11 to require "only a rational method [of appraisal], equally applied to all property, which results in essential fairness." *Teton [Valley Ranch v. State Board of Equalization ]*, 735 P.2d [107,] 115 [ (Wyo.1987) ] (Urbigkit, J., summarizing Wyoming value-assessment-taxation jurisprudence in a concurring opinion).

*Holly Sugar Corporation v. State Board of Equalization for State of Wyoming*, 839 P.2d 959, 964 (Wyo.1992); *see also Basin Electric Power Cooperative, Inc.*, 970 P.2d at 852.

[¶ 12] This conclusion is supported by a study commissioned by the Department in 1994 which reviewed all aspects of Wyoming's procedures used in valuing state assessed property. Study of State Assessed Property (Dec. 9, 1994) (State Study). Ad Valorem Services, Inc., a consulting firm, performed the study. The professionals involved in conducting the study and making objective recommendations to the state for modifications of its procedures were experienced in property tax valuation and represented no particular group or taxpayer. The consultants sought input from taxpayers, the Department, and the public. They made twenty-two recommendations and ranked them in order of importance. The recom-

mendations were tested by applying them to seven selected companies to determine how they would affect the determination of fair market value for tax purposes of those companies' properties. Some companies' valuations went up, some went down, and others were unaffected. Public hearings were held to review the results.

[¶ 13] The State Study's Recommendation No. 19 addressed the same question we face in this case: What is the proper method for valuing tax exempt property? The report recognized the need to adjust the net book value of exempt property to account for depreciation and obsolescence to reflect its current market value and that it was inappropriate to simply deduct the net book value of the exempt property from the allocated market value of taxable property. It also concluded the method utilized by the state— applying the system ratio of market value to net book value—was appropriate in most instances. However, the State Study identified the problem we face in this case when the Department's allocation formula attributes proportionately more value to Wyoming property and concluded, "Since the state value is the result of both the valuation and the allocation process, we conclude that the adjustment for non-taxables should reflect the same logic." State Study at 74. The State Study described its approach as "rather simple and straightforward logic" which resulted in the market value of the exempt property bearing the same relationship to the total state market value as the net book value of that property bore to the total state net book value. *Id.* at 75.[1]

[¶ 14] Recommendation No. 19 specifically provided:

> In most cases, it should make little valuation difference whether the deduction for non-taxables is made based upon a relationship between system value or allocated state value and property investment. When a significant difference does arise, the appraiser should first reconsider his/her allocation factor then, when comforta-

---

1. The net book value of PacifiCorp's exempt property is 22.85 percent of the total net book value of its Wyoming property, and 22.85 percent of the total market value of its Wyoming property is $358,684,824, which is, as noted in the State Study, "mathematically equivalent to using the state . . . ratio." State Study at 75 n. 78.

ble, base the deduction for non-taxables on the investment relationship between non-taxables and total state investment (i.e. state investment in non-taxable assets divided [by] total state investment) and apply this ratio to the allocated state value.

[¶ 15] During the public hearings and discussions with the Department concerning the recommendations, no one questioned the propriety of Recommendation No. 19. At the hearing before the Board in this matter, David W. Shank, President of Ad Valorem Services, Inc., one of the authors of the State Study, testified and explained the basis for the recommendations. He explained how recognized texts were reviewed on this issue and, while those texts did not directly address this issue, application of accepted appraisal concepts required use of the state ratio. For example, the principle of matching, which is recognized in appraisal texts, would require using the same valuation method for taxable property as for tax exempt property. Following presentation of the recommendations, the Department prepared a document outlining its response to the recommendations, and, with regard to Recommendation No. 19, it stated, "This will be reviewed by staff for implementation for 1995. It[ ]s full implementation may not be until 1996 as the models and data sets will need taxpayer assistance for full application." However, the recommendation was not implemented, and, instead, the Department rejected PacifiCorp's appeals in tax years 1996 through 1999.

[¶ 16] As the Board found, no statute, rule, or regulation required use of the system ratio. None of the reasons given by the Department for failing to implement Recommendation No. 19 addressed the substance of the recommendation and why it was inappropriate. The Department first contended the issue was in litigation in another case; however, the Board properly found the issue was not addressed in that litigation. Next, the Department argued it had historically used the system ratio which is not surprising given, as noted in Recommendation No. 19, in most situations there is no difference between the system ratio and the state ratio. It failed to address why that

historic approach was appropriate in situations where the system and the state ratio differed significantly. The Department also claimed uniformity required by the constitution and statutes was a reason for using the system ratio for all utility taxpayers. The uniformity requirement of Article 15, Section 11 of the Wyoming Constitution is not violated simply because the Department may use the system ratio for other companies which do not have significantly different state ratios. The constitution simply demands that all property be "uniformly valued at its full value as defined by the legislature." Wyo. Const. art. 15, § 11. In fact, the Department's failure to consider a situation unique to one taxpayer risks overvaluing or undervaluing its property, which would violate the uniformity requirement. *J. Ray McDermott & Co. v. Hudson,* 370 P.2d 364, 368–69 (Wyo. 1962). As justification for rejecting Recommendation No. 19, the Department cited use of the system value by some other states. The Board rejected the Department's attempt to show other states agreed with its approach after PacifiCorp objected to such evidence as hearsay and unreliable because of the vast differences in state law. We find such information of little use in any event since it is clear other states fall into both camps and little consistency exists between the various states' legal and procedural environments. Finally, the Department's witness suggested that a change in Department personnel was occurring at the same time the recommendations were being considered leaving the impression this issue had simply not been addressed.

[¶ 17] A careful review of the record before the Board reveals no substantial evidence supporting the Department's conclusion that a system ratio accurately reflects the true market value of Wyoming tax exempt property. PacifiCorp carried its burden of proving the state ratio did so. Expert testimony was provided from Mr. Shank, who has vast national experience in ad valorem taxation, concerning the application of accepted appraisal principles. His ability and expertise were recognized by the state when he was retained in 1994 to conduct the audit of Wyoming's valuation procedures.

PacifiCorp also provided testimony from Norman Ross, its own tax manager, and Larry Richards, a statistician who opined on the mathematical inaccuracy of the Department's use of the system ratio. This evidentiary record, along with simple logic and accepted appraisal principles, persuades us to conclude a taxpayer's tax exempt property should be valued in the same manner as its taxable property in order to assure an ultimate fair market value as required by Wyoming law. Wyo. Stat. Ann. § 39–1–101(a)(vi) (Michie 1997) (repealed 1998); Wyo. Stat. Ann. § 39–11–101(a)(vi) (LexisNexis 2001); Wyo. Const. art. 15, § 11.

[¶ 18] The Department suggests that the disputed tax of $280,000 is relatively small, and the Board's order infers the taxpayer is lucky to enjoy the "largess of the Wyoming legislature" by being granted any exemption at all. It is, in fact, the legislature's responsibility to determine tax policy for the state subject to the limitations of the constitution, and the legislature has determined that certain property should be exempt from taxation. Neither the Department, the Board, nor this court has authority to do less than assure the taxpayer enjoys the full exemption created by the legislature valued in the same manner as the property subject to tax. The Department has concluded PacifiCorp's Wyoming property is worth proportionately more than its property in other states, and the state willingly collects property tax on that basis. Fairness, logic, and the evidentiary record in this case require that same conclusion for the tax exempt property.

[¶ 19] Our opinion in *PacifiCorp I* was to the contrary. We held the Petition for Rehearing in that case in abeyance pending consideration of this case (*PacifiCorp II*) which raises the same issues but for different tax years. In *PacifiCorp I*, the matter was decided by the Board in an expedited proceeding without the presentation of evidence. Our decision relied heavily on our conclusion that PacifiCorp had failed to carry its burden of proof and, absent such credible evidence, the Department's valuation is presumed valid. *Chicago, Burlington & Quincy Railroad Company v. Bruch*, 400 P.2d 494, 499 (Wyo. 1965). In contrast, in *PacifiCorp II* the Board considered the issue after two days of hearings, the presentation of multiple expert witnesses, and voluminous exhibits.

[¶ 20] The Board's order in *PacifiCorp II* and our opinion in *PacifiCorp I* raised a new issue that must be addressed. It was implied that something was amiss with a comparison of an allocated Wyoming market value to an actual book value, suggesting these were apples and oranges and the proper approach would be to also allocate the net book value to Wyoming in the same manner as the market value and then compare the two, which would, of course, result in the same ratio as the system ratio. No expert in any of these proceedings, including the public consideration of the State Study, suggested such an approach was appropriate. If this suggestion had technical merit, surely the Department would have relied upon it for support. The allocation of the system market value is necessary to determine the market value of the Wyoming property which is unknown and cannot be separately calculated because it operates as part of an integrated system. However, it is unnecessary and somewhat deceiving to allocate the net book value using the same formula because that value is known as found in PacifiCorp's financial statements.

[¶ 21] This case proves the old adage, "I understood what you said until you explained it to me." The Department's and PacifiCorp's arguments often misdirected this inquiry from the basic question: Should a taxpayer's taxable property be valued in the same manner as its tax exempt property? We are convinced the answer commanded by the statute and the constitution is in the affirmative.

[¶ 22] Accordingly, we modify *PacifiCorp I* to the extent that opinion approved the Department's valuation methodology for PacifiCorp's exempt property. As mentioned, this conclusion was reached after careful reconsideration of the issues and with the aid of useful expert testimony which permitted PacifiCorp to carry its requisite burden of proof. However, the result reached in *PacifiCorp I* must stand due to PacifiCorp's failure to carry its burden of producing evidence in that particular case to overcome the pre-

sumption of correctness that attached to the valuation methodology used by the Department. *PacifiCorp, Inc.,* 13 P.3d at 261. The Board's decision in the instant case is reversed, and the matter is remanded for further proceedings consistent with this opinion.