**SCOTT REALTY COMPANY, Veterans Real Estate Company, John E. Scott, Sr., and John E. Scott, Jr., Appellants (Plaintiffs below),**

v.

**The STATE BOARD OF EQUALIZATION for the State of Wyoming, Appellee (Defendant below).**

No. 3230.

Supreme Court of Wyoming.

Sept. 14, 1964.

Robert R. Rose, Jr., Casper, for appellants.

Richard E. Day, Special Asst. Atty. Gen., Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

The record shows that appellants owned a number of pieces of Casper real estate, most of which was rental property. According to appellants' testimony, they had been convinced for some time that the property was not correctly valued for taxation purposes but had let the matter go without protest inasmuch as Mr. John E. Scott, Sr., preferred the money he would otherwise have had to pay to the Federal government as income tax go to the county. Later, much of this property came to have no renters, and the economic pressure was such that Scott drew to the assessor's attention his belief that the valuations were incorrect. He also appeared before the county board of equalization and protested the property valuations. Tax relief was granted by the county only on one specific piece of property whereupon a petition was filed with the State Board of Equalization appealing various assessments fixed by the county board. After hearing, the decision of the county board was affirmed. Thereafter, appeal was taken to the district court which affirmed the decision of the State Board of Equalization, and appellants now ask this court for relief from that judgment.

Essentially, the burden of appellants' argument here is that the statutes of the State of Wyoming require the assessor and the

board to assess the property at either its fair value or true and full value and that the employment of a replacement cost theory ignores the direction of the statutes and is improper.

At the hearing, the assessor was called for cross-examination and discussed the method used in evaluating property in Natrona County, including that concerned with the appeal. The assessors take 25 to 30 per cent of the fair market value of the real estate as the basis for their assessment. They establish the value of buildings on property by methods which include the Boeckh system, measuring and categorizing the buildings as to types, conditions, materials, and other aspects which would relate to replacement cost. Their detailed analyses of the buildings are forwarded to Cheyenne where two evaluating engineers figure replacement cost in the various localities as of 1938–1939. A new building is assessed at 60 per cent of that replacement cost and then is depreciated 2 per cent of the replacement cost each year and assessed at 60 per cent. (Effective for the 1963 tax year, this system was modified somewhat and now structures are depreciated at the rate of 1 per cent per year up to 56 per cent. Instead of 60 per cent of the depreciated 1938–1939 reproduction cost, assessors have been directed to use 63 per cent.) Matters of obsolescence, including loss of value because of misplacement of buildings in certain locations, changes in the character of neighborhoods, etc., are initially left to the discretion of the assessor.

We think that overmuch is made by appellants of the provisions of the statutes: § 18–96, W.S.1957 (1963 Cum.Supp.), prescribing the oath of the assessor, requiring him to assess property at its fair value; § 18–98(g), W.S.1957 (1963 Cum.Supp.), requiring him to place on the property "as near as possible the fair value"; § 18–108.1, W.S.1957 (1963 Cum.Supp.), defining fair value to be in conformity with values and procedures prescribed by the State Board of Equalization under § 39–26, W.S.1957 (duties of the board). The legislature was

undoubtedly by these provisions seeking only to provide methods for effectuating the constitutional provision, Art. 15, § 11, "All property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal," and that of Art. 1, § 28, " * * * All taxation shall be equal and uniform."

Uniform assessment for taxation could scarcely be accomplished unless there existed some method of establishing fair value and arrangements by taxing authorities which would uniformly adopt a percentage of such value as that set as a basis for taxation would not for that reason be improper. The board of equalization was established by Art. 15, § 9, Wyo.Const., and § 39–16, W.S.1957, et seq.; it has power among other things to "equalize the valuation on all property in the several counties for the state revenue and such other duties as may be prescribed by law," Art. 15, § 10, Wyo. Const. Employment by the board of a replacement cost theory may well have been a basic step in following the mentioned provisions in the constitution and statutes. This is not to say that all factors relating to value should not be taken into consideration by the taxing authorities. Nevertheless, the current cost of rebuilding a structure according to contract prices of labor and material would ordinarily be the highest value since property is usually not worth more than the cost to replace it with a similar one of equal utility. In the instant case appellants have not shown that they have been injured by the fact that under the procedure prescribed by the state board the assessor arrives at a rollback figure.

Many of the buildings whose valuations the appellants questioned had been moved from other locations. At the hearing before the state board, it was adduced that the age of fifteen years was automatically given to relocated buildings. Perhaps such action resulted in an overevaluation of the Scott property; the burden of so proving

was upon the taxpayer. At the hearing before the state board in an attempt to prove the assessments to be in error, plaintiffs introduced a table of figures, contending that they reflected the proper valuations in different years, but upon interrogation it developed that such figures had been arrived at by using the Boeckh system with replacement cost figures of 1924–1928 (rather than 1938–1939). The only other evidence regarding the value of the property was Scott's testimony that he knew property in the area where his own home was which would sell for $18,000 to $25,000 which had been assessed for $2,500 to $3,300, while the property in question was worth much less but was assessed as high as $3,785. Such testimony did not discharge plaintiffs' burden, and the trial court was thus fully justified in refusing to overturn the decision of the State Board of Equalization.

Affirmed.