CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, a corporation, Appellant (Plaintiff below),

v.

Albert P. BRUCH, Walter W. Hudson, Richard J. Luman, Francis Hillard, and Zan Lewis, constituting the State Board of Equalization of the State of Wyoming, Appellees (Defendants below).

No. 3268.

Supreme Court of Wyoming.

March 23, 1965.

and J. C. Street, Denver, Colo., for appellant.

John F. Raper, Atty. Gen., A. Fred Miller, Sp. Asst. Atty. Gen., Cheyenne, for appellees.

Before PARKER, C. J., and HARNSBERGER and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The Chicago, Burlington & Quincy Railroad Company, a corporation, appeals from a judgment of the district court affirming an order of the State Board of Equalization fixing, for taxation purposes, the 1962 value of appellant's Wyoming properties at the sum of $20,719,660.

The appellant has moved to strike certain appendices attached to appellees' brief, namely Appendix A, which consists of excerpts from minutes of the board; Appendix B, a schedule of the tonnage handled by appellant each year from 1933 to 1963, inclusive, as shown by its annual reports to the *Wyoming Public Service Commission*; Appendix C, a schedule showing per-mile roadway valuation of appellant's property in one Wyoming county for years from 1919 to 1964, inclusive; Appendix F, a listing of certain of appellant's depots and section houses; Appendix G, a schedule showing the number of miles in which various weight classes of rails are used; Appendix H, a 1961 statistical abstract of the United States, showing the purchasing power of the dollar, 1940 to 1960; Appendix I, a schedule taken in part from appellant's annual reports to the *Wyoming Public Service Commission* and in part from "official records" of the State Board of Equalization, showing book values of appellant's road and equipment properties in years 1957 to 1961, inclusive; Appendix J, a schedule listing unidentified road and equipment properties; Appendices K and L, schedules showing Interstate Commerce Commission's cost of reproduction figures at 1961-period prices of Class-1 railways with specific reference to Chicago and North West, C. B. & Quincy, Col. and Sou., Colo. and Wyo.,

R. T. Cubbage and C. W. Krohl, Chicago, Ill., Henderson, Godfrey, Kline & Uchner, David D. Uchner, Cheyenne, W. L. Peck

and Union Pacific; and Appendix M, a schedule listing unidentified trackages in various states.

We note, however, that appellees' brief identifies Appendix J as showing appellant's property and Appendix M as being a listing of appellant's trackage.

Appellant's motion to strike is also directed against certain comments and various other statements incorporated in appellees' brief, but those comments and statements are nothing more than expressions of the writers' opinion.

Appellant's attack upon the above-designated appendices involves the question of what this court should take into account when called upon to consider the legality and correctness of a district court's judgment when sitting as an appellate tribunal upon an appeal from an administrative body.

▆ Previous opinions of this court have indicated that upon appeal to the district court from administrative orders and decisions only matters adduced before that agency may be considered, although, when necessary, evidence bearing solely upon the question of alleged fraud, undue influence, et cetera, may be received.

▆ It is therefore necessary for an appealing party to bring to the district court the entire record of the proceedings which were had before the administrative body, and, if a transcript of the testimony and evidence is not available or is deemed to be insufficient, the appellant must establish the deficiency by other proof. Ordinarily this brings to the attention of the district court all the evidence upon which the administrative body acted and which might justify its decision. But there are some material differences between the functioning of the divers administrative authorities. In one class are proceedings where there are contesting parties. In another, are proceedings where there is no contest. In the first instance, the proceeding is adversary. In the second it is not. In the first, the parties to the contest are pitted against each other. In the second the government, as represented by the administrative agency, is not against anyone. In consequence, the proceeding in the latter type of case is more in the nature of an inquiry to enable the administrative agency to arrive at a just and fair determination. The fact that the conclusion reached by the governmental agency is unsatisfactory to the party affected and an appeal is taken to the courts does not alter the situation.

This difference has bearing upon the question of what the administrative agency may take or was privileged to take into consideration in arriving at a conclusion. Similarly, it has bearing upon what should be brought before the district court when it is called upon to evaluate the correctness and the propriety of the administrative agency's action or decisions.

▆ Although it is quite possible that certain of the material contained in the appendices to the brief may have been admissible in the hearing before the board by way of judicial notice, sometimes called official or administrative notice, 2 Am.Jur. 2d, Administrative Law, § 385, pp. 191–192; 73 C.J.S. Public Administrative Bodies and Procedure § 123, pp. 442, 444; Annotation, 18 A.L.R.2d 552, 573, the district court could not have based its determination of the correctness of the board's decision upon the assumption that the board had such knowledge or had such information before it.

In Bunten v. Rock Springs Grazing Ass'n, 29 Wyo. 461, 215 P. 244, this court said it was not necessary for the State Board of Equalization to act only upon evidence produced before it, thus implying that the board might take into account matters which were within its knowledge even though they did not appear as evidence. But in passing upon appellant's motion to strike we are not dealing with the propriety of the State Board of Equalization having considered historical matter, information, or material within the knowledge of its members but which did not appear in the record of its proceedings as sent to the

district court nor adduced by evidence in that court. We are concerned only with matters brought to the attention of the district court and which that court had opportunity to consider when ruling upon the propriety of the administrative authority's determination of the taxable value of appellant's properties in Wyoming.

 Under the authority of Bunten, when the appeal from the board's decision was taken to the district court, opportunity was present to produce before the court evidence of all the material, knowledge and information which the administrative agency had considered in arriving at its conclusion. Therefore, if such matter was not placed before the district court so that it might have considered the same, we may not consider it in judging the legality and correctness of the district court's affirming action. Insofar as the criticized appendices are concerned, this was not done. Neither does it appear that their subject matter was incorporated in any official report of the State Board of Equalization and offered in evidence for judicial notice under the provisions of §§ 1–166 and 1–167, W.S.1957. Perhaps the district court could have taken judicial notice of certain of the matters now sought to be included by the board, if this had been called to its attention, but we will not judicially notice them when they are advanced for the first time upon appeal to this court.

██ As the sole issue now before us is the correctness of the district court's decision, we will examine only that which the district court had before it. Natural Gas Consumers of Rock Springs, Wyoming v. Northern Utilities Co. of Casper, 70 Wyo. 225, 247 P.2d 767, 779; Chittim v. Belle Fourche Bentonite Products Co., 60 Wyo. 235, 149 P.2d 142; Claughton v. Johnson, 47 Wyo. 447, 38 P.2d 612, 614, rehearing denied 47 Wyo. 536, 41 P.2d 527; Mercer v. Thorley, 48 Wyo. 141, 43 P.2d 692, 696; Gore v. John, 61 Wyo. 246, 157 P.2d 552, 556. It follows that appellant's motion to strike the appendices, which were not brought to the attention of the district

court, is granted, and their contents will not be considered.

Although the railroad company suggests the fundamental question presented by its appeal is "how should an interstate railroad be valued and assessed for tax purposes?" the proper inquiry here is whether the district court erred in failing to find, under the evidence before it and matter judicially noticed, that the board's action was either arbitrary, capricious, despotic, or fraudulent. In other words, Did the board act with illegal impropriety?

██ At the outset of the hearing upon the railroad company's appeal from the decision of the State Board of Equalization, the district court made it plain that the hearing before it would not be a trial de novo; that questions of whether the unit system comes under Wyoming law or whether there are better ways for valuing the railroad company's property than that used by the board were immaterial. So also upon the appeal to this court questions of the merit of the unit system or the merits of any other method of assessing valuation for tax purposes are also immaterial.

██ As pointed out in discussing appellant's motion to strike certain "appendices" to appellees' brief, the district court's action affirming the order of the board must be judged in the light of the testimony and evidence submitted to the court on appeal having in mind previous decisions of this court regarding the prerogatives of an administrative agency to utilize knowledge acquired during its functioning and in performing its duties. By those decisions the district court was informed that although Wyoming law contemplates property valuations for tax purposes are to be their "true values" at private sale (by statutes passed since the original decisions, now "fair value"), such value is but a matter of opinion upon which the minds of men often disagree; that the point where excessive valuation begins is indefinite; that the board must be presumed to have acted legally and honestly; that there is no such thing as absolute value, hence, exact justice

in fixing value is not always possible; that courts cannot control the discretion of administrative tribunals when fairly and honestly exercised, although, of course, the record must disclose substantial evidence to support the board's decision. Bunten v. Rock Springs Grazing Ass'n, supra; and see J. Ray McDermott & Co. v. Hudson, Wyo., 370 P.2d 364.

In the absence of evidence to the contrary, the district court was required to assume the members of the board acted according to the directions contained in § 39–26, W.S.1957, as such officers are presumed to have performed their duties. This would entail their making effort to become acquainted and familiar with various methods and means by which values for taxation purposes might be reflected. Thus they would have gained some knowledge pertaining to the values of railroad properties. Also, the district court was entitled to credit the board with having coupled these accumulations of knowledge and information with the testimony and evidence presented to it upon the appeal. Bunten v. Rock Springs Grazing Ass'n, supra.

Specifically, the basic complaint of the railroad seems to be that the board failed to adopt what it refers to as the unit system of valuation for tax purposes when it valued the railroad company's Wyoming properties. From the railroad's standpoint the unit system of valuation may be the most desirable. But the measure of justness to the railroad in the method used in arriving at the taxable valuation of its properties is not limited either to the method used or to the amount arrived at by such use.

We keep in mind that § 39–258, W.S.1957, paragraphs 8 and 9, after requiring the railroad to annually file with the State Board of Equalization a statement or schedule showing, among other things, the amount of its capital stock, the amount of capital stock paid up, the market value or true value thereof, the total amount of indebtedness, the location and actual valuation of its properties, the total gross and net earnings from operation, the amount expended in operation and maintenance, its property improvements and betterments, and the amount of dividends last declared and paid during the year next preceding, with such other information which the board may require, says, "which value shall be taken into account and be considered in arriving at the true value of such railroad property and its franchise."

We fail to discover anything in the record which required the district court find that the board ignored or failed to take into consideration the matters so reported to it by the railroad. That the board would not accept those returns either in the amounts shown therein or in their bearing upon the ultimate valuation established for tax purposes is not proof that they were not considered. By § 39–259, W.S.1957, such returns by railroads are said not to be conclusive as to the value of the property.

Criticism is voiced at the board for arriving at an assessed valuation without having found a fair value. While such a procedure as that pursued by the board cannot be approved, this circumstance alone would not warrant reversal. Scott Realty Company v. State Board of Equalization, Wyo., 395 P.2d 289. Some point was made of the fact that the director had in his original figures allowed no depreciation on various items, notably equipment. This was true in the 1959 hearing before the board and was alluded to subsequently. There was also some indication that buildings were not properly valued. Had the appellant concentrated on such matters, it is quite possible that the valuation set by the board could have been shown to be arbitrary and capricious. However, as noted in J. Ray McDermott & Co. v. Hudson, Wyo., 370 P.2d 364, 370, any such showing must be more than one of mere difference of opinion. In determining whether appellant met its burden, various factors must be considered, among these are: The board in arriving at the value of railroad structures compared them to non-railroad structures of a similar type (valued in accord-

ance with the Boeckh system); the concession by the railroad's witness, Mr. Bush, that under Interstate Commerce Commission accounting only 40 percent of the railroad's road property is subject to depreciation; and appellant's failure to present any affirmative evidence of value except under the unit system. Additionally, the board, apparently in recognitoin that the director had not in all instances arrived at a true value, ordered a decrease of $584,709 in the 1962 valuation according to the testimony of the Director of the Ad Valorem Tax Department. Considering all these circumstances, the appellant did not meet its burden and the judgment of the trial court was correct.

The complaint of appellant seems to be fairly well summed up in the testimony of the secretary-treasurer of the company that he *thought* the board did not give sufficient *weight* to certain factors present in the unit system of valuation. The weight to be given factors in the unit system or to items otherwise to be valued in arriving at valuation of the whole is a matter exclusively within the discretion of the board, and when that discretion is exercised without impropriety the district court could not and we will not disturb it.

The testimony in the record offered in behalf of appellant is a comprehensive explanation of the unit-system method of valuation for purposes of taxation. It also contains much criticism for the methods pursued by the board. The entire record brought to this court, however, is devoid of any evidence showing arbitrary, capricious, despotic, or implied fraudulent action on the part of the board or any of its members. Nor has it been shown that an excessive valuation has been placed upon the appellant's properties. In fact, there seems to have been a material reduction below previous valuations of appellant's properties in a period when it is common knowledge that valuations have substantially increased.

Although the record, briefs, and arguments, both oral and written, are exhaustive, they deal for the most part with the question of what might be the best method of valuation of railroad company properties. As indicated by the district court and hereinabove, we are not concerned with that question.

Since we find no error in the judgment of the district court, the same is affirmed.

Affirmed.

GRAY, J., not participating.

McINTYRE, Justice (dissenting).

The Wyoming Constitution and statutes guarantee that all property in the state shall be assessed and taxed uniformly and equally.

Article 15, § 11, Wyoming Constitution, declares that all property shall be "uniformly assessed" for taxation. It is made the duty of the legislature to prescribe such regulations as shall secure a "just valuation" of all property. Article 1, § 28, Wyoming Constitution, provides that all taxation shall be "equal and uniform."

With respect to railroad property, § 39–259, W.S.1957, directs the State Board of Equalization, *from all the information it is able to obtain,* to find the *true value* of all railroad property and to assess the same "on the same basis" as other property.

If railroad property is not assessed on the same basis as other property, after a determination of its true value, it is not legally assessed. In the record before us, there is an unequivocal and often repeated admission by the Board of Equalization that property generally in Wyoming, aside from mineral and railroad properties, is assessed at a level of 20 to 25 percent of its fair value.

The taxpayer in this case offered one kind of evidence after another indicating its assessment exceeds 25 percent of its true or fair value. For example, this evidence shows that if the assessment on appellant's property in Wyoming, of $20,719,-660.00, is assumed to be 21 percent of its value, then the value of plaintiff's property

in Wyoming would be $98,665,048. Since, as the company claims, only 6.3 percent of Burlington's entire value is located in Wyoming, the value of the whole Burlington system would have to be $1,566,111,873 if Wyoming's assessment is correct. Or, if the assessed valuation in Wyoming is assumed to be at 25 percent, the indicated system value would still be in excess of one billion dollars.

Such figures were described by the company's witnesses as clearly unrealistic; and the witnesses maintained such figures exceeded any actual figures for the value of the railroad, unless the valuation were based on what it would cost to reproduce the entire Burlington system new at 1962 price levels. This testimony was not challenged or contradicted.

I am not suggesting that the testimony of Burlington, extensive as it was, should be considered as binding or conclusive in this case. I do say, however, that it was the duty of the Board, under § 39–259, to have "all the information it is able to obtain." If it had before it insufficient information upon which it could reasonably determine the true value of plaintiff's property in Wyoming, its action should not be upheld. See School District No. 9, Fremont County, v. District Boundary Board In and For Fremont County, Wyo., 351 P.2d 106, 116.

As indicated in the School District No. 9 case, it is not necessary for a litigant to show that a board had some sinister intention in order to obtain relief from the board's action. Admittedly, members of the Board of Equalization are individually honest and sincere and conscientious men. It cannot be said the Board has acted in bad faith; but its assessment procedure leaves something to be desired as far as legality is concerned.

The director of the Board's ad valorem tax department testified the Board did not start with true value and did not at any time try to determine true value. He worked out what he considered was proper "assessed valuation." This was done by taking the Burlington's annual tax return and changing the figures thereon to represent what he thought was an equalized value. Admittedly the director gave no consideration to the earnings of the Burlington nor to its stock and debt value.

There is a total absence of evidence to show that the director had any information or any basis for finding the figures submitted by Burlington to be erroneous, or for making the changes which he made. If there was indeed no basis for his changes, then his action in making them was without sufficient information and therefore arbitrary according to the rule adopted in School District No. 9, Fremont County v. District Boundary Board In and For Fremont County, supra.

Most states, the evidence in this case establishes, have adopted a unit system of valuing railroad property for taxation purposes. It would seem to be a just and equitable system. However, it is conceded the Board of Equalization is not bound to accept that system or any other particular system. I would say, nevertheless, it should have some system which is capable of being described and explained when a taxpayer makes the kind of showing of inequality which plaintiff has made in this case.

It has come to our attention several times that buildings have been valued and assessed by application of a formula known as the Boeckh System. There is, however, no indication in the record before us in this case that any comparable formula or system was used for the valuing of railroad property.

Instead of coming forward with evidence showing a clear and comprehensible method of valuing railroad property, the Board of Equalization has shown only that for all intents and purposes it has taken figures from nowhere and used them as the assessed value of various categories of plaintiff's property. It now asks us to uphold this action on the ground that there is an absence of proof to show that the Board meant to be arbitrary or that it acted in bad faith.

One of the Board members confirmed what the director testified to with respect

to the lack of any system, formula or basis for determining valuation. He also indicated there was no "true value" determination; that the assessment figure arrived at was "roughly presumed" to represent approximately 25 percent of the value of the railroad in Wyoming. This member further verified that "very little" weight, if any, was given to the value of stocks and bonds or to earnings of the company. Neither of the witnesses attempted to explain how the assessment was actually made, nor what basis, if any, there would be for considering it equal to other assessments.

Section 39–258, W.S.1957, provides for returns from railroads to the Board of Equalization, which returns are to include showings of the market value of the capital stock, or if no market value then the true value; the company's debt value; and its earnings. The section then specifies that all this information shall be "taken into consideration" by the Board in fixing value. Those testifying on behalf of the Board made it apparent that no meaningful consideration, if any at all, was given to such factors as stock value, debts, and earnings. The explanation is that the stock is not actively traded.

The Board is, of course, not precluded from giving weight to the fact that stock is not actively traded, but the assessment procedures should be such that the Board can show clearly, when challenged in that regard, that it has investigated the stock value, the debt value, and the earnings of an assessed railroad; and that it has given due and proper consideration under the circumstances of the particular case to these factors.

In J. Ray McDermott & Co., Inc. v. Hudson, Wyo., 370 P.2d 364, 370, we condemned the action of the Board of Equalization as arbitrary when it failed to consider a necessary and important factor in determining the value of oil for gross-product tax purposes. In the case now under consideration, the factors, ignored and not substantially or reasonably considered, are factors which the legislature itself has prescribed as factors to be considered and used in the valuing of railroad property.

These factors are: True value; the value of the capital stock; the company's debt value; and its earnings. It is not for us to say, or even for the Board to say, whether consideration should be given to these items. The law itself requires this to be done. An attempted assessment without giving due and proper consideration to such factors is not only arbitrary but illegal as well.

If the Board were able to show and did show that it had used factors which would produce an equivalent result, we could be more tolerant of departures from strict compliance with the statutes. But this has not been done. It has not shown, for example, that actual costs less depreciation and obsolescence were used as a factor; it has not shown that any substitute for the statutory factor of earnings was used. In short, there is no showing that any factors, system or method of any kind were employed in the valuing and assessing of plaintiff's property.

I recognize, as already indicated, that the Board is not expected to accept without question figures submitted by the company; it need not accept the unit method of valuing railroad property, as proposed by plaintiff; and the court should not under any circumstances substitute its judgment for that of the Board in the matter of valuing and assessing property.

In my opinion, however, we should do what was done in J. Ray McDermott & Co., Inc. v. Hudson, supra. We should reverse the case with instructions that the Board proceed with revaluation of plaintiff's property in conformity with the requirements of law.