2005 WY 60
BP AMERICA PRODUCTION COMPANY; CHEVRON U.S.A., INC.; AND ANADARKO E & P COMPANY, LP, Appellants (Petitioners),
v.
DEPARTMENT OF REVENUE, STATE OF WYOMING; and BOARD OF COUNTY COMMISSIONERS FOR UINTA COUNTY, WYOMING, Appellees (Respondents).
No. 03-191
Supreme Court of Wyoming. APRIL TERM, A.D. 2005.
May 31, 2005
Representing Appellant BP America Production Company: Robert A. Swiech, John L. Bordes, Jr., and Nicole Crighton of Oreck, Bradley, Crighton, Adams & Chase, Boulder, Colorado.
Representing Appellant Chevron U.S.A., Inc. William J. Thomson II and Randall B. Reed of Dray, Thomson & Dyekman, P.C., Cheyenne, Wyoming.
Representing Appellant Anadarko E&P Company, LP: Lawrence J. Wolfe and Walter F. Eggers, III, of Hollard & Hart, LLP, Cheyenne, Wyoming; Russell W. Miller, Assistant General Counsel of Anadarko Petroleum Corp., Houston, Texas. Argument by Mr. Wolfe.
Representing Appellee Wyoming Department of Revenue: Patrick J. Crank, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; Karl D. Anderson, Senior Assistant Attorney General; Martin L. Hardsocg, Senior Assistant Attorney General, Cheyenne, Wyoming. Argument by Mr. Anderson.
Representing Appellee Board of County Commissioners of Uinta County: Bruck A. Salzburg of Freudenthal, Salzburg & Bonds, P.C., Cheyenne, Wyoming.
Before HILL, C.J., and GOLDEN, LEHMAN,[*] KITE, and VOIGT, JJ.
GOLDEN, Justice.
[¶1] BP America Production Company, Chevron USA, Inc., and Anadarko E & P Co. LP ("Taxpayers") appeal a State Board of Equalization (the Board) decision upholding the Department of Revenue's (the Department) decision to use the comparable value method for determining the fair market value of their year 2000 natural gas production from the Whitney Canyon Field. See Wyo. Stat. Ann. § 39-14-203(b)(vi)(B) (LexisNexis 2003).[1] Taxpayers primarily contend that the Department cannot use the comparable value method in the absence of rules defining what Taxpayers allege to be ambiguous terms in the statute (§ 39-14-203(b)(vi)(B)). Taxpayers also contend that, under the particular facts and circumstances of their Whitney Canyon production, there are no comparable processing fee agreements, again prohibiting the Department from using the comparable value method.
[¶2] During the hearing before the Board, the Board allowed Uinta County to intervene in the administrative proceedings. After a full hearing, the Board upheld the Department's use of the comparable value method for Taxpayers' production. Taxpayers then appealed the Board's decision to the district court. The district court certified the appeal to this Court pursuant to W.R.A.P. 12.09(b). This Court accepted certification and hereby affirms the order of the Board. On the issue regarding intervention of Uinta County, however, we reverse on the authority of Amoco Production Co. v. Wyoming Dept. of Revenue, et al., 2004 WY 89, ¶¶9-27, 94 P.3d 430, ¶¶9-27 (Wyo. 2004).

ISSUES
[¶3] Taxpayers state these issues:
A. Did the Department and Board incorrectly interpret and apply the comparable value statute, Wyo. Stat. Ann. § 39-14-203(b)(vi)(B)?
1. Should the Board have prevented the Department from using the comparable value method in the absence of rules defining the terms of the comparable value statute?
2. Did the Board erroneously construe the statutory terms" other parties," "like quantity," and "taking into consideration the quality, terms and conditions"?
B. Did the Department's actions and the Board's justifications for those actions violate the Appellants' rights to substantive and procedural due process?
C. Has the Department treated the Appellants differently from similarly situated taxpayers, thereby violating these Appellants' Equal Protection rights?
D. Did the Board err when it allowed Uinta County to intervene in this case?
The Department responds with these issues:
1. Did the State Board of Equalization correctly affirm the Department of Revenue's selection of the comparable value method, pursuant to Wyo. Stat. § 39-14-203(b)(vi)(B), as the method which most accurately reflected the taxable fair market value of Appellants' 2000 Whitney Canyon production?
2. Did the State Board of Equalization correctly affirm the Department of Revenue's application of a comparable value processing fee of 25% of the product paid in-kind, the maximum fee paid by any producer regardless of any circumstance, to value Appellants' 2000 Whitney Canyon production?
3. Did the State Board correctly determine that Appellants failed to carry their burden of proof when they failed to offer any evidence that their application of proportionate profits, pursuant to Wyo. Stat. § 39-14-203(b)(vi)(D), reflected the most accurate fair market value for taxation purposes, as required by Wyo. Stat. § 39-14-203(b)(viii)?
4. Did the State Board of Equalization correctly affirm the Department's rejection of Appellants' application of proportionate profits, pursuant to Wyo. Stat. § 39-14-203(b)(vi)(D), which resulted in processing deductions far in excess of the actual costs to process and which bore no relationship to actual processing costs?
5. Did the State Board of Equalization correctly determine that Appellants' due process rights were not violated?
Uinta County, permitted intervention by the State Board of Equalization and also by the district court, states its issue to be whether the Board erred when it permitted that intervention in the contested case pending before that Board.

FACTS
[¶4] Taxpayers own working interests in sour natural gas production from wells in the Whitney Canyon Field. Taxpayers also are joint owners in the Whitney Canyon Processing Plant (the Plant), along with one other entity that is also a producer in the Whitney Canyon Field (the Plant Owners). The Plant was built by these four owners to process their Whitney Canyon sour natural gas production prior to its sale. The Plant Owners are governed by a construction and operating agreement (the C&O Agreement). Attached to the C&O Agreement is a processing agreement entered into separately by each of the four producers who also are the Plant Owners. The processing agreement provides that the Plant charges a processing fee of 25% of each individual producer's production volume in kind. In turn, the joint Plant Owners agree to receive that fee paid in-kind to the Plant in proportion to each Plant Owner's ownership interest in the Plant, and to separately market the production received in-kind.
[¶5] The Wyoming Legislature has charged the Wyoming Department of Revenue with the task of determining the fair market value for natural gas production for severance tax purposes. Wyo. Stat. Ann. § 39-14-202(a)(i) (LexisNexis 2003). The Wyoming Legislature has provided the Department with specific guidance on how it should determine the fair market value of natural gas production. See generally Wyo. Stat. Ann. § 39-14-203 (LexisNexis 2003). Pertinent to this appeal, the legislature has directed the Department to value natural gas production that is not sold at or prior to the point of valuation by bona-fide arms-length sale pursuant to one of four methods: 1) comparable sales; 2) comparable value; 3) netback; and 4) proportionate profits. § 39-14-203(b)(vi).
[¶6] In exercising its statutory authority to determine the fair market value for Taxpayers' gas production, the Department identified and instructed Taxpayers to apply the comparable value method to value their year 2000 through 2002 natural gas production. The legislature describes the comparable value method in this language:
Comparable value  The fair market value is the arms-length sales price less processing and transportation fees charged to other parties for minerals of like quantity, taking into consideration the quality, terms and conditions under which the minerals are being processed or transported[.]
§ 39-14-203(b)(vi)(B). As applied to the instant case, the object of the comparable value method is to determine a processing fee (no transportation fee is at issue). Once determined, that fee is subtracted by the Department from the value of the actual sale of processed gas, thereby arriving at a fair market value for the gas after production is complete but before processing. It is fair to say that in using this method, the Department is to make reasonable inferences based on reliable information about processing fees paid by other taxpayers in similar situations.
[¶7] In applying the comparable value method to the production of Taxpayers, the Department treated the processing agreements between the Whitney Canyon producers, including Taxpayers, and the Plant as four separate agreements. The Department obtained two other processing agreements in addition to the processing agreements between the Plant and the Taxpayers, which contain terms and conditions incorporating some variations from Taxpayers' processing agreements. All the processing agreements, however, provide that the processing fee is not to exceed 25%, in kind, of product volume processed. The Department accepted the 25% processing fee contained in the agreements as adequate comparables and used the 25% fee in the comparable value method to determine the fair market value of each Taxpayer's gas production.[2] Taxpayers objected, claiming the processing agreements between themselves as producers and themselves as Plant Owners could not be used as separate comparables since they were all between the same entities. Specifically, Taxpayers challenged the Department's construction and application of the specific statutory language that Taxpayers as producers qualify as "other parties" with regard to processing agreements with the Plant. Taxpayers also argued that the processing fee agreements do not pertain to gas of "like quantity," and that the quality, terms and conditions of the processing fee agreements are not comparable. The Department maintained its decision to apply the comparable value method.
[¶8] Taxpayers appealed to the Board. Uinta County was allowed to intervene in that appeal and present argument. In a lengthy written decision, the Board found that the Plant owners were an entity governed by a construction and operating agreement (the C&O Agreement). Through individual processing agreements, each producer contracted with the plant individually for processing and each processing agreement set a maximum 25% processing fee under all circumstances. This set fee applied to each producer regardless of the quantity of gas processed. Some of the contracts had terms and conditions that differed but had no effect upon the maximum processing fee to be charged; it never exceeded 25%. Finding that each processing agreement was between the Plant Owners as an individual entity and the individual producer, the Board compared the contracts and rejected the claim that it used the producer's own contract as a comparable against the producer. The Board agreed that the 25% processing fee relied upon by the Department was determined by the processing fee agreements and use of that comparable value accurately reflected fair market value.
[¶9] The Board examined other taxpayers who were permitted to use the proportionate profits methodology and determined that those situations were sufficiently distinct to allow the different treatment. The Board found no constitutional violation occurred because uniformly achieving taxation based upon accurate fair market value may well require application of different methodologies to similarly situated mineral taxpayers if comparable values differ in processing agreements or different cost structures exist. This appeal followed.

STANDARD OF REVIEW
[¶10] This Court reviews administrative actions pursuant to the standard articulated by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2003) of the Wyoming Administrative Procedure Act, which provides in pertinent part:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
. . . .
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
. . . .
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right[.]
This Court reviews appeals certified to this Court from the district court under the appellate standards applicable to a reviewing court of the first instance. Wyodak Resources Devel. Corp. v. Wyoming Dept. of Revenue, 2002 WY 181, ¶9, 60 P.3d 129, ¶9 (Wyo. 2002) (citing Amax Coal Co. v. Wyoming State Bd. of Equalization, 819 P.2d 825, 828 (Wyo. 1991)) ("When an administrative agency case is certified to this court under W.R.A.P. 12.09(b), we review the decision under the appellate standards applicable to a reviewing court of the first instance."). We review both the agency's findings of fact and law:
Considerable deference is accorded to the findings of fact of the agency, and this Court does not disturb them unless they are contrary to the overwhelming weight of the evidence. Amoco Production Co. v. Wyoming State Bd. of Equalization, 12 P.3d 668, 671 (Wyo. 2000). An agency's conclusions of law can be affirmed only if they are in accord with the law. Id. at 672. Our function is to correct any error that an agency makes in its interpretation or application of the law.
EOG Resources, Inc. v. Wyoming Dep't of Revenue, 2004 WY 35, ¶12, 86 P.3d 1280, ¶12 (Wyo. 2004).
[¶11] Regarding review of agency findings of fact:
[W]e will disturb an agency's decision when it is clearly contrary to the overwhelming weight of the evidence on the record. The district court and this Court are charged with reviewing an agency's decision for substantial evidence. That duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. Occasionally, the process of review will necessarily require the reviewing court to engage in an assessment of the facts adduced during the administrative hearing. That assessment does not usually involve a reweighing or reconsideration of the basic facts found by the agency. However, as a by-product of that process, the reviewing court may arrive at an ultimate conclusion derived from those basic facts that is different from the agency's. A court will reach a different conclusion based on the evidence only in those situations where the agency's conclusion is clearly contrary to the weight of the evidence.
McTiernan v.Scott, 2001 WY 87, ¶16, 31 P.3d 749, ¶16 (Wyo. 2001) (citations and footnote omitted).
[¶12] We review agency conclusions of law de novo:
The construction and interpretation of statutes are questions of law which we review de novo. Powder River Coal Company v. Wyoming State Board of Equalization, 2002 WY 5, ¶6, 38 P.3d 423, ¶6 (Wyo. 2002); Osenbaugh v. State ex rel. Wyoming Workers' Safety and Compensation Division, 10 P.3d 544, 547 (Wyo. 2000). We affirm an agency's conclusions of law when they are in accordance with the law. Powder River Coal Company, 2002 WY 5, ¶6, 38 P.3d 423. However, when the agency has failed to properly invoke and apply the correct rule of law, we correct the agency's error. Id.

Wyodak Resources Dev. Corp., ¶9. Thus, our standard of review for agency actions involves two steps, as necessary:
Our review of an agency's findings of fact and conclusions of law is simple. First, if we can find from the evidence preserved in the record a rational view for the findings of fact made by the agency, we then say the findings are supported by substantial evidence. See Holdings' Little America v. Board of County Com'rs. of Laramie County, 670 P.2d 699, 704 (Wyo. 1983). Using judicial reliance upon and deference to agency expertise in its weighing of the evidence, a reviewing court will not disturb the agency determination unless it is "clearly contrary to the overwhelming weight of the evidence on record." Southwest Wyoming Rehabilitation Center [v. Emp. Sec. Com'n], 781 P.2d [918] at 921 [(Wyo. 1989)]. (Accord Cody Gas Co. v. Public Service Com'n of Wyoming, 748 P.2d 1144, 1146 (Wyo. 1988).) See Ohlmaier v. Industrial Com'n of Arizona, 161 Ariz. 113, 776 P.2d 791 (1989). See also for a drug test unemployment compensation award review, Grace Drilling Co. v. Board of Review of Indus. Com'n of Utah, 776 P.2d 63 (Utah. App. 1989). Second, we ask if the conclusions of law made by the agency are in accordance with law. Belle Fourche Pipeline Co. v. State, 766 P.2d 537 (Wyo. 1988).
When we review agency conclusions of law, we are alert to three possibilities. The agency may correctly apply their findings of fact to the correct rule of law. Belle Fourche Pipeline Co., 766 P.2d 537. In such case, the agency's conclusions are affirmed. But the agency could apply their findings of fact to the wrong rule of law or they could incorrectly apply their findings of fact to a correct rule of law. Ballard v. Wyoming Pari-Mutuel Com'n of State of Wyoming, 750 P.2d 286 (Wyo. 1988). In either case, we correct an agency conclusion to ensure accordance with law. Rocky Mountain Oil & Gas Ass'n v. State Board of Equalization, 749 P.2d 221 (Wyo. 1987). Our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed, [Wyoming Dep't of Revenue v.] Casper Legion Baseball Club, Inc., 76[7] P.2d 608 [(Wyo. 1989)]; if it is not, it is to be corrected, Rocky Mountain Oil & Gas Ass'n, 749 P.2d 221.
Employment Sec. Comm'n of Wyoming v. Western Gas Processors, Ltd., 786 P.2d 866, 871 (Wyo. 1990). Findings of ultimate fact are reviewed de novo:
When an agency's determinations contain elements of law and fact, we do not treat them with the deference we reserve for findings of basic fact. When reviewing an "ultimate fact," we separate the factual and legal aspects of the finding to determine whether the correct rule of law has been properly applied to the facts. We do not defer to the agency's ultimate factual finding if there is an error in either stating or applying the law.
Basin Elec. Power Co-op., Inc. v. Dep't of Revenue, State of Wyo., 970 P.2d 841, 850-51 (Wyo. 1998) (citations omitted).
[¶13] The party asserting an improper valuation method bears the burden of proof. Amoco Production Co. v. Wyoming State Bd. of Equalization, 899 P.2d 855, 858 (Wyo. 1995). In reviewing a valuation method, the task of the appellate court is not to determine which of various appraisal methods is best or most accurately estimates fair market value. The reviewing court only determines whether substantial evidence exists to support use of the chosen method. Id.

DISCUSSION

Intervention by Uinta County
[¶14] This Court can easily dispose of the issue of the standing of Uinta County to intervene in the instant proceedings before the Board. Taxpayers contend that the Board erred when it allowed Uinta County to intervene in these proceedings. We have recently settled this issue in Amoco Production Co. v. Dept. of Revenue, 2004 WY 89, 94 P.3d 430 (Wyo. 2004). We held that the Board has authority to allow a county to intervene in a contested case before the Board if the county qualifies for intervention as of right. Id. at ¶13. We determined that a county's challenge to the Department's findings is limited to only the quantity of taxable product or similar error and does not allow intervention into a contested case brought by a taxpayer against the Department challenging substantive methodology decisions by the Department regarding valuation. Id. at ¶¶18-19. Uinta County was allowed to intervene in this case brought by Taxpayers to challenge the Department's choice of methodology and the rule set forth in Amoco prohibits the county's intervention. We find that the Board has erred and reverse the order allowing intervention. Uinta County is dismissed from this appeal.

Construction of § 39-14-203(b)(vi)(B)
[¶15] Taxpayers first contend that the Board misconstrued the language of the comparable value statute. The main thrust of Taxpayers' argument is that specific, individual words in the statute ("other parties," "quantity," "quality, terms and conditions") are ambiguous. Taxpayers analyze these words in isolation from the statute as a whole. The flaw with this argument is that it loses the forest for the trees. This Court considers the entire statute in determining if the language of a statute is ambiguous:
In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed in pari materia and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Wyoming Board of Outfitters and Professional Guides v. Clark, 2001 WY 78, ¶12, 30 P.3d 36, ¶12 (Wyo. 2001); Murphy v. State Canvassing Board, 12 P.3d 677, 679 (Wyo. 2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. Billis v. State, 800 P.2d 401, 413 (Wyo. 1990) (citing McGuire v. McGuire, 608 P.2d 1278, 1283 (Wyo. 1980)).
Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions. Gray v. Stratton Real Estate, 2001 WY 125, ¶5, 36 P.3d 1127, ¶5 (Wyo. 2001); Bowen v. State, Wyoming Real Estate Commission, 900 P.2d 1140, 1143 (Wyo. 1995).
Loberg v. Wyo. Workers' Safety & Comp. Div., 2004 WY 48, ¶5, 88 P.3d 1045, ¶5 (Wyo. 2004) (quoting Board of County Comm'rs of Teton County v. Crow, 2003 WY 40, ¶¶40-41, 65 P.3d 720, ¶¶40-41 (Wyo. 2003)). Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.
[¶16] To put the language of § 39-14-203(b)(vi)(B) into context, we quote section (b) in its entirety:
(b) Basis of tax. The following shall apply:
(i) Crude oil, lease condensate and natural gas shall be valued for taxation as provided in this subsection;
(ii) The fair market value for crude oil, lease condensate and natural gas shall be determined after the production process is completed. Notwithstanding paragraph (x) of this subsection, expenses incurred by the producer prior to the point of valuation are not deductible in determining the fair market value of the mineral;
(iii) The production process for crude oil or lease condensate is completed after extracting from the well, gathering, heating and treating, separating, injecting for enhanced recovery, and any other activity which occurs before the outlet of the initial storage facility or lease automatic custody transfer (LACT) unit;
(iv) The production process for natural gas is completed after extracting from the well, gathering, separating, injecting and any other activity which occurs before the outlet of the initial dehydrator. When no dehydration is performed, other than within a processing facility, the production process is completed at the inlet to the initial transportation related compressor, custody transfer meter or processing facility, whichever occurs first;
(v) If the crude oil, lease condensate or natural gas production as provided by paragraphs (iii) and (iv) of this subsection are sold to a third party, or processed or transported by a third party at or prior to the point of valuation provided in paragraphs (iii) and (iv) of this subsection, the fair market value shall be the value established by bona fide arms-length transaction;
(vi) In the event the crude oil, lease condensate or natural gas production as provided by paragraphs (iii) and (iv) of this subsection is not sold at or prior to the point of valuation by bona fide arms-length sale, or, except as otherwise provided, if the production is used without sale, the department shall identify the method it intends to apply under this paragraph to determine the fair market value and notify the taxpayer of that method on or before September 1 of the year preceding the year for which the method shall be employed. The department shall determine the fair market value by application of one (1) of the following methods:
(A) Comparable sales  The fair market value is the representative arms-length market price for minerals of like quality and quantity used or sold at the point of valuation provided in paragraphs (iii) and (iv) of this subsection taking into consideration the location, terms and conditions under which the minerals are being used or sold;
(B) Comparable value  The fair market value is the arms-length sales price less processing and transportation fees charged to other parties for minerals of like quantity, taking into consideration the quality, terms and conditions under which the minerals are being processed or transported;
(C) Netback  The fair market value is the sales price minus expenses incurred by the producer for transporting produced minerals to the point of sale and third party processing fees. The netback method shall not be utilized in determining the taxable value of natural gas which is processed by the producer of the natural gas;
(D) Proportionate profits  The fair market value is:
(I) The total amount received from the sale of the minerals minus exempt royalties, nonexempt royalties and production taxes times the quotient of the direct cost of producing the minerals divided by the direct cost of producing, processing and transporting the minerals; plus
(II) Nonexempt royalties and production taxes.
(vii) When the taxpayer and department jointly agree, that the application of one (1) of the methods listed in paragraph (vi) of this subsection does not produce a representative fair market value for the crude oil, lease condensate or natural gas production, a mutually acceptable alternative method may be applied;
(viii) If the fair market value of the crude oil, lease condensate or natural gas production as provided by paragraphs (iii) and (iv) of this subsection is determined pursuant to paragraph (vi) of this subsection, the method employed shall be used in computing taxes for three (3) years including the year in which it is first applied or until changed by mutual agreement between the department and taxpayer. If the taxpayer believes the valuation method selected by the department does not accurately reflect the fair market value of the crude oil, lease condensate or natural gas, the taxpayer may appeal to the board of equalization for a change of methods within one (1) year from the date the department notified the taxpayer of the method selected;
(ix) If the department fails to notify the taxpayer of the method selected pursuant to paragraph (vi) of this subsection, the taxpayer shall select a method and inform the department. The method selected by the taxpayer shall be used in computing taxes for three (3) years including the year in which it is first applied or until changed by mutual agreement between the taxpayer and the department. If the department believes the valuation technique selected by the taxpayer does not accurately reflect the fair market value of the crude oil, lease condensate or natural gas, the department may appeal to the board of equalization for a change of methods within one (1) year from the date the taxpayer notified the department of the method selected;
(x) If crude oil is enhanced prior to the point of valuation as defined in paragraph (iii) of this subsection by either a blending process with a higher grade hydrocarbon or through a refining process such as cracking, then the fair market value shall be the fair market value of the crude oil absent the blending or refining process;
(xi) For natural gas, the total of all actual transportation costs from the point where the production process is completed to the inlet of the processing facility or main transmission line shall not exceed fifty percent (50%) of the value of the gross product without approval of the department based on documentation that the costs are due to environmental, public health or safety considerations, or other unusual circumstances.
[¶17] Taxpayers begin their argument by claiming that this Court has already determined that the language of § 39-14-203(b)(vi)(B) is ambiguous and rulemaking is required before the Department can apply the method. Taxpayers rely upon certain language in Amoco Production v. State Bd. of Equalization, 882 P.2d 866 (Wyo. 1994) (Amoco I), to support their argument. The issue in Amoco I was whether the Department could use confidential processing fee agreements as comparables pursuant to § 39-14-203(b)(vi)(B). The Amoco I court determined the Department could not use facts unavailable to the instant taxpayer to determine the fair market value of that taxpayer's product as such would deprive the taxpayer of due process of law.
[¶18] In the process of presenting its opinion in Amoco I, the Amoco I court stated, "We note in passing that some of the statutory factors are amorphous to a degree. The comparable value method is to be used for minerals of `like quantity,' and it is to take into consideration `the quality' and `terms and conditions' under which the minerals are being processed or transported." 882 P.2d at 871. After explaining that rules might help alleviate any existing ambiguity, that court went on to say, "We simply suggest, given the language of the statute, there might be some wisdom in pursuing [rulemaking]." Id. This language in Amoco I, relied upon by Taxpayers in this appeal, is the purest form of dicta. The language of the statute was not at issue in that appeal. The only issue was the Department's use of confidential information in determining fair market value. The Amoco I court qualified the discussion Taxpayers cite from beginning to end. The Amoco I court begins the discussion by stating, "we note in passing" and ended the discussion with "we simply suggest" and "there might be some wisdom." These equivocal statements in the context of dicta have no precedential value.
[¶19] Returning, then, to our de novo review of § 39-14-203(b)(vi)(B), Taxpayers argue that the terms "other parties," "like quantity" and "quality, terms and conditions" are ambiguous. By focusing their argument on these specific terms, Taxpayers examine only the trees. Looking at the context of these words, we find that the objective of the comparable value statute is for the Department to find reliable information about processing fees paid by other taxpayers in similar situations, from which the Department can make reasonable inferences as to a particular taxpayer's processing costs.
[¶20] Given this context, and the particular facts of this case, this Court finds no necessity to construe the statutory terms Taxpayers wish to put at issue. The statute requires the Department find processing fee agreements from similarly situated producers. Taxpayers are clearly similarly situated producers. They produce gas from the same field and process the gas at the same Plant pursuant to identical processing agreements. Given four identical processing fee agreements, there is no need to further define the terms "quantity" or "quality, terms and conditions." There is no difference in the agreements as to how the processing fee is determined. When looking for comparable processing fee contracts, one simply cannot get more comparable than four identical contracts. Since finding comparable processing fees is the ultimate goal, that goal is reached if these agreements are truly four separate agreements.[3]
[¶21] The most relevant issue for this case, therefore, is the definition and application of the term "other parties." Taxpayers argue that "other parties" means "third parties engaging in arms-length negotiations" to determine a processing fee agreement. Taxpayers continue that they are not third parties to the processing agreements between themselves as producers and themselves as Plant Owners. Taxpayers further allege that the processing agreements they entered into were not negotiated at arms-length but rather were an integral part of the negotiation of the terms of the C&O agreement.
[¶22] We find no support for Taxpayers' argument on the term "other parties" as used in the statute. We find that the legislature did not intend that an "other party" has to be a "third party engaged in arms-length negotiations." The legislature uses the term "third party" several times within subsection (b), for instance in (b)(v). Most importantly for our current purpose, the legislature uses the term in (b)(vi)(C) in establishing the netback method of valuation. The statutory language specifically states that "third party processing fees" are to be deducted from the sales price in using the netback method. The legislature did not add such a provision to the comparable value method. The legislature's omission of the term "third party" must be given effect. Merrill v. Jansma, 2004 WY 26, ¶29, 86 P.3d 270, ¶29 (Wyo. 2004) ("[O]mission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them."). Construing all parts of the statute in pari materia, paying particular attention to the statutory language used, and more specifically the statutory language not used, we find the legislature did not intend for comparable processing fee contracts to necessarily be arms-length, third-party contracts in order to achieve the ultimate statutory goal of taxation based upon accurate fair market value.
[¶23] Finding that the language of the statute is not ambiguous as applied to the instant facts, we must reject Taxpayers' general argument that the terms of the comparable value statute are so ambiguous as to make the component parts of the method incomprehensible in the absence of departmental rules providing more precise definitions. We find no requirement for rulemaking to resolve any statutory ambiguity at issue in this case. Taxpayers believe that, in the absence of rulemaking, the Department is empowered with unfettered discretion to determine comparable value on an ad hoc basis. This argument goes too far. It is probably impossible to draft statutes with sufficient precision and foresight to resolve each of the hundreds of issues that are likely to arise during the life of a statute. This does not, however, make a statute void for vagueness or unenforceable barring rulemaking. In the instant case, Taxpayers were advised of the processing fee agreements the Department intended to use as comparables and had no difficulty presenting argument against the application of the comparable value method under the circumstances.

Application of § 39-14-203(b)(vi)(B) to the Instant Facts
[¶24] Taxpayers present limited argument regarding the application of the statutory language to their particular facts. The primary argument put forward by Taxpayers is that the Plant is not a separate entity. Thus, the argument continues, Taxpayers as producers factually are not distinct from themselves as Plant Owners. The Department disagreed and concluded that each Taxpayer entered into each processing contract as a separate and distinct entity. The Department determined that the Taxpayers as producers were competitors in the applicable marketplace and the processing contracts had resulted from a willing processor and a willing producer negotiating fairly in that marketplace. The Department found these parties were positioned in their respective contracts as "other parties" for purposes of comparison under the statute.
[¶25] The Board reached the same result from slightly different reasoning. The Board, after a careful review of the terms of the C&O agreements, found that the Plant operated as a business entity separate from each producer. The Board "characterized that entity as a partnership based on the evidence in the record." Taxpayers take particular umbrage with the Board determination that the Plant Ownership arrangement is a "partnership." Taxpayers misread the Order of the Board. The Board only "characterized" the ownership arrangement as a partnership, it did not determine that the Plant Ownership arrangement was a partnership under Wyoming law. The pertinent holding was that the Plant operated as an entity separate and distinct from Taxpayers as producers. After conducting our own review of the C&O agreement, this Court agrees that the Plant operates as an entity separate from Taxpayers as producers.
[¶26] Ultimately, substantial evidence supports the Department's selection of the comparable value method, and Taxpayers have not carried their burden of proving that the Department erred in choosing the comparable value method to determine the fair market value of their year 2000 production:
The Department's valuations for state-assessed property are presumed valid, accurate, and correct. Chicago, Burlington & Quincy R.R. Co. v. Bruch, 400 P.2d 494, 498-99 (Wyo. 1965). This presumption can only be overcome by credible evidence to the contrary. Id. In the absence of evidence to the contrary, we presume that the officials charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both. Id.

The petitioner has the initial burden to present sufficient credible evidence to overcome the presumption, and a mere difference of opinion as to value is not sufficient. Teton Valley Ranch v. State Board of Equalization, 735 P.2d 107, 113 (Wyo. 1987); Chicago, Burlington & Quincy R.R., 400 P.2d at 499. If the petitioner successfully overcomes the presumption, then the Board is required to equally weigh the evidence of all parties and measure it against the appropriate burden of proof. Basin [Electric Power Coop., Inc. v. Dep't of Revenue], 970 P.2d [841,] at 851 [(Wyo. 1998)]. Once the presumption is successfully overcome, the burden of going forward shifts to the Department to defend its valuation. Id. The petitioner, however, by challenging the valuation, bears the ultimate burden of persuasion to prove by a preponderance of the evidence that the valuation was not derived in accordance with the required constitutional and statutory requirements for valuing state-assessed property. Id.

Amoco Production Co. v. Dep't of Revenue, State of Wyo., 2004 WY 89, ¶¶7-8, 94 P.3d 430, ¶¶7-8 (Wyo. 2004). This Court finds no mistake of law or fact in the Department's selection of the comparable value method to calculate the fair market value of the production of Taxpayers at issue.

Substantive and Procedural Due Process
[¶27] Taxpayers contend that the Department's decisions in this case, combined with the Board's justifications for those decisions, violated their rights to both procedural and substantive due process.
The pertinent provisions of the Fifth and Fourteenth Amendments to the United States Constitution and Wyo. Const. art. 1, § 6 essentially provide that no person shall be deprived of life, liberty or property without due process of law.
Reiter v. State, 2001 WY 116, ¶19, 36 P.3d 586, ¶19 (Wyo. 2001). Due process is both procedural and substantive. Id. (citing Mills v. Reynolds, 807 P.2d 383, 395 (Wyo. 1991)). Procedural due process is satisfied "if a person is afforded adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Robbins v. South Cheyenne Water and Sewage Dist., 792 P.2d 1380, 1385 (Wyo. 1990).
[¶28] Taxpayers contend that the Department did not provide the comparable value until months after the appropriate time, provided no justification that the specified contracts were comparable within the meaning of the statute, and provided no explanation how the statutory terms were met by using these processing contracts. Without appropriate action by the Department, Taxpayers claim they were uncertain what evidence sufficed to disprove the Department's action was statutorily authorized and the hearing they received did not meet procedural due process requirements. The Department contends that Taxpayers did not require this information and suffered no prejudice because they have previously applied the comparable value method with no information at all from the Department, did not request rule-making, and did not request any explanation. The Department maintains that Taxpayers' complaints about ambiguity and lack of rule-making spring from their determination to preserve the favorable tax treatment derived from using the proportionate profits methodology despite its inapplicability.
[¶29] Taxpayers presented all of these objections at a contested case proceeding and received a decision based upon a thorough examination of the facts, arguments, rules, and law. The law requires no more to satisfy procedural due process, and we find no constitutional violation. Taxpayers' substantive due process claim stems from the Board's alleged arbitrary actions because of a failure to provide guidance on how the statutory terms are defined. We have already stated that it is impossible to draft statutes to anticipate every scenario. We believe that to also be true of regulations. The record shows that the Department has a long history of reviewing contracts because contracts between taxpayers impact determinations of fair market value. We have rejected the notion that the legislature intended such a restrictive definition of the statutory terms that these processing contracts cannot establish a comparable value for taxation purposes. Taxpayers used the processing contracts to establish the processing fee. Their having used the contracts to establish the processing fee market, we do not accept the premise that agency use of those contracts violates Taxpayers' due process rights.

Equal Protection
[¶30] In this argument, Taxpayers claim that they have been treated differently from other taxpayer-producers who also own an interest in a processing plant. Taxpayers reject the Board's decision that they differ from other "taxpayer-producers-processors" because they believe the Board erroneously determined they were a "partnership entity." Taxpayers claim this conclusion is wrong because the plant had no revenues and was not titled in the name of a partnership. The Board's review indicates that the Department has selected the comparable value methodology for all taxpayer-producers for sales away from the point valuation and all of them responded that no comparable value existed. The Department investigated and found that while that was true for some taxpayer-producers, that was not the case for these taxpayers. The Board concluded that the evidence supported distinguishing the operations at Whitney Canyon from the other facilities. Our review shows that this finding is supported by substantial evidence, and we agree with the legal conclusion that neither the statute nor the constitution has been violated. We agree with the Board's conclusion that uniformly achieving taxation based upon accurate fair market value may well require application of different methodologies to similarly situated mineral taxpayers if comparable values differ in processing agreements or different cost structures exist.

CONCLUSION
[¶31] We affirm the order upholding the Department's use of the challenged comparable value methodology and find no constitutional violation occurred in the contested case proceedings. We reverse the order allowing the county to intervene in these proceedings; however, the Board's decision is upheld in all other respects.
NOTES
[*] Justice Lehman concurred prior to his death on December 10, 2004.
[1] BP and Chevron also appealed the Department's ultimate valuation determination. They present no argument to this Court, however, that the final valuation number does not accurately reflect the fair market value of their respective production.
[2] Taxpayers proposed the proportionate profit method of determining fair market value, under which Taxpayers calculated processing fees in excess of 60%. The Department's low processing fee necessarily resulted in a dramatically higher taxable fair market value than that calculated by the Taxpayers' proportionate profits methodology.
[3] The Department did rely upon a few other processing fee agreements with the Plant as further comparables. The statute does not qualify how many processing fee contracts the Department needs to analyze. Determining what number of processing fee contracts the Department must analyze for comparison is a fact driven decision to be made on a case-by-case basis. In this case, the Department had what it deemed to be four separate processing agreements as well as the other processing agreements. This Court finds that the four identical agreements between four separate producers and the Plant present adequate comparables to enable the Department to fairly estimate Taxpayers' processing costs. In making this finding under these particular facts, we expressly reject Taxpayers' contention that the processing fee agreement pool is too small to allow for comparison between the different agreements. Further, because determination of this case does not require use of any other agreements beyond the base four, we expressly decline, at this time, to analyze the other processing fee agreements used by the Department for their comparability under the statute.